**Marquis Aurbach Coffing**
Scott A. Marquis, Esq.
Nevada Bar No. 6407
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
smarquis@maclaw.com

**Carmel, Milazzo & DiChiara, LLP**
Ross David Carmel, Esq.
New York Bar No. 4686580
*Pro Hac Vice* Forthcoming
55 West 39th Street, 18th Floor
New York, NY 10018
rcarmel@cmdllp.com
Attorneys for Plaintiff, Phillip Forman

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PHILLIP FORMAN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED HEALTH PRODUCTS, INC., a Nevada domestic corporation; and DOUGLAS K. BEPLATE, an individual,<br><br>Defendants. | Case Number:<br>2:19-cv-519<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Phillip Forman ("Dr. Forman" or "Plaintiff"), by and through his attorneys, the law firms of Marquis Aurbach Coffing and Carmel, Milazzo & DiChiara, LLP, alleges and complains against Defendant United Health Products, Inc. ("UHP") and Douglas K. Beplate ("Beplate") (collectively referred to herein as the "Defendants") as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

## THE PARTIES

1.     The Plaintiff, Dr. Forman, is an individual, residing in Rego Park, New York. Dr. Forman is a retired physician.

2.     Upon information and belief, Defendant Beplate is a natural person residing in the state of Nevada.  Mr. Beplate was at all pertinent times the CEO of UHP.

3.     Upon information and belief, Defendant United Health Products, Inc. ("UHP")is a corporation organized and existing pursuant to the laws of the State of Nevada, with its principal place of business and/or registered addresses located at 10624 S. Eastern Ave #A290, Henderson, Nevada 89052, and 1225 Vista Del Monte Dr, Mesquite, Nevada 89027.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a) in that the parties are citizens of different states and the matter in controversy exceed the sum or value of $75,000 exclusive of interest and costs.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because it is where a substantial part of the events or omissions giving rise to the claims here occurred, and because the Employment Agreement contains a provision providing for venue in Las Vegas, Nevada.

6.     The Court may exercise personal jurisdiction over UHP because it transacts business within the State of Nevada, and this action arises out of that business.

7.     The Court may exercise personal jurisdiction over Beplate because he is a citizen of the state of Nevada, residing in the state of Nevada, and committed acts and conducts business within the state out of which this action arises.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

## FACTS COMMON TO ALL CLAIMS

### Background

8.      Dr. Forman is a retired physician who previously served as the chairman of the Board of Directors of UHP and its Chief Medical Advisor.  Dr. Forman served on the Board of Directors beginning in 2011, and served as CEO of UHP from during 2013 and 2014.

9.      Defendant UHP is in the business of, *inter alia*, the sale of hemostatic products.

10.      Defendant Beplate is the current Chief Executive Officer of UHP, and the son-in-law of the now deceased Harold D. Anderson.

11.      On November 10, 2014, Dr. Forman and UHP entered into an employment agreement, whereby Dr. Forman was compensated for past services and engaged to continue serving UHP as the Chairman of the Board and Chief Medical Advisor for UHP (the "Employment Agreement").

12.      In return for the on-going services, UHP agreed to pay Dr. Forman a base salary of five thousand dollars per month.

13.      In addition, for services he had previously rendered to UHP, it was agreed that Dr. Forman would receive three million shares of UHP common stock.

14.      Pursuant to the Employment Agreement, Dr. Forman's three million shares were deemed validly issued, fully paid, and non-assessable.

15.      UHP failed to issue Dr. Forman the 3,000,000 shares or pay him the $5,000 monthly salary pursuant to the Employment Agreement.

16.      At all pertinent times, Dr. Forman was in compliance with his obligations under the Employment Agreement.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

17.     As set forth in detail below, Dr. Forman was employed by UHP pursuant to an Employment Agreement dated November 10, 2014 (the "Employment Agreement"). The Employment Agreement required UHP to compensate Dr. Forman for his prior services by issuing him million shares of common stock. For Dr. Forman's future services the Employment Agreement required payment of a monthly salary of $5,000 per month with discretionary bonuses.

18.     This action arises from UHP's willful failure and refusal to compensate Dr. Forman as required by the Employment Agreement, or even as required by a subsequent Amendment to the Employment Agreement dated June 25, 2015 (the "Amendment"), which attempted to drastically cut Dr. Forman's compensation under the Employment Agreement.

19.     Whereas Dr. Forman was entitled to 3 million shares of UHP stock and $35,000 in salary under the Employment Agreement, the Amendment purports to only provide Dr. Forman with 1.6 million shares of UHP stock.

20.     The Amendment also provided for Dr. Forman to serve on the UHP Medical Advisory Board for an unspecified period of time. While serving on the Advisory Board, UHP promised to pay Dr. Forman $250.00 per hour for his time when his services were requested by the CEO, or at a rate of $2,000 per day when his services were requested for a day.

21.     The Amendment also required Dr. Forman to refrain from making disparaging remarks about UHP or from competing against UHP.

22.     UHP's promise to issue 1,600,000 shares was not valid consideration because UHP had a preexisting duty to issue 3 million shares to Dr. Forman under the Employment Agreement.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

23.     No consideration was provided by UHP to Dr. Forman in return for the reduction of the number of UHP common stock shares from 3 million to 1.6 million.

24.     No consideration was provided by UHP to  Dr. Forman for the elimination of the monthly salary that Dr. Forman was entitled to for the months of December 2014 through June 2015.

25.     No consideration was provided to Dr. Forman for his agreement to not disparage UHP for a period of 2 years.

26.     No consideration was provided to Dr. Forman for his agreement to not compete with UHP for a period of 2 years.

27.     Because no consideration was given to Dr. Forman for entering into the Amendment (he literally received nothing of value in return for the numerous concessions and obligations imposed by the Amendment), the Amendment is not a valid contract and cannot be enforced.

28.     Nevertheless, at all pertinent times, Dr. Forman complied with all of his obligations under the Employment Agreement and Amendment.

29.     Upon information and belief, the Amendment was designed by the Defendants to take advantage of the financial dilemma they knew Dr. Forman was in during the summer of 2015, when Forman was required by court order to pay his child's nearly $60,000 tuition payment.  Knowing Dr. Foreman did not have the funds available to comply with the order, Defendants offered to arrange for the sale of Dr. Forman's shares to a third-party for the exact sum Dr. Forman needed, $60,000.

30.     Upon information and belief, Defendants plan was to require Dr. Forman to enter two contracts simultaneously, the Amendment and a stock purchase agreement.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

31.     Thus, the sale of Dr. Forman's 1.6 million shares pursuant to a stock purchase agreement, was referenced in the Amendment with an indication the two agreements were being entered simultaneously.

32.     The Stock Purchase Agreement (the "SPA"), however, was dated July 22, 2015, nearly one month after the Amendment.

33.     The parties to the SPA were Dr. Forman and Mr. Harold E. Anderson, but the $60,000 payment was to be delivered to Dr. Forman's wife pursuant to the court order.

34.     Upon information and belief, Mr. Harold Anderson is the now deceased father-in-law of Beplate, the CEO of UHP.

35.     Defendants never informed Dr. Forman that Mr. Anderson was related to Beplate.

36.     Moreover, at all pertinent times, UHP and Mr. Beplate were aware Dr. Forman was under a court order directing that the proceeds of the third-party sale of the Shares contemplated by the Amendment (but never consummated), be used to resolve an outstanding tuition bill.  The SPA specifically provided for the purchase price to be paid directly to Dr. Forman's ex-wife for that purpose, and any nonpayment put Dr. Forman in danger of being held in contempt of court.

37.     On or about September 3, 2015,  six weeks after the SPA was entered, Mr. Beplate advised the school that $30,000 of the proceeds of the sale of the Shares had been wired to the school and that the remaining past due amount would be wired on September 8, 2015.

38.     Thereafter, Mr. Beplate called the school to ask for its wiring instructions, despite his prior statement indicating that he already wired the funds.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

39.     Mr. Beplate contends that in a separate telephone call the school instructed him not to wire the funds, again, contradicting his statement that he had already wired the funds.

40.     Because payment was never made under the SPA, Dr. Forman was forced to take out a loan at the last minute in order to pay the tuition comply with the court's order.

41.     Pursuant to the SPA, the shares were to be sold for the sum of $60,000.00, but at the time the Amendment was entered those shares were trading at $0.09 per share, and were therefore worth approximately $144,000.00.

42.     Upon information and belief, the SPA never closed because the $60,000 was never paid and Dr. Forman's stock was never issued by UHP.

43.     Dr. Forman was consequently forced to obtain a loan for the money to pay his child's tuition and comply with the court order.

44.     Ultimately, Dr. Forman was never issued any shares from UHP pursuant to the Employment Agreement or Amendment, and was never paid by UHP for his monthly salary ($35,000) or even for the $15,000 that UHP agreed it owed Dr. Forman in SEC filings.

45.     UHP disclosed the terms of the Employment Agreement and Amendment in SEC public filings over the course of two years but never attempted to pay the money or issue the stock that it admittedly owed  Dr. Forman.

**The Stock Price Rises and Dr. Forman Demands his Shares**

46.     Following the failure to pay the $60,000 pursuant to the SPA, the dispute went dormant because the sum in dispute did not justify litigation given Dr. Forman's financial condition.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

47.     However, recently UHP's stock has been on the rise, increasing nearly 1000% since 2015, and justifying the  expenditures needed to assert his rights against UHP.

48.     Thus, on February 11, 2019,  4.5 years after agreeing to the Amendment while under financial duress, Dr. Forman sent a formal demand for the issuance of his shares and the payment of the money that UHP admittedly owed him.  .

49.     On February 15, 2019, UHP responded by alleging that the Shares were sold by Dr. Forman to a third-party and for that reason were not owed to him.

50.     The only evidence included with UHP's February 15, 2019 letter was an outgoing wire request created by Beplate on February 14, 2019, three days after receipt of the above referenced demand letter, to wire transfer of $60,000, purportedly on behalf of Mr. Anderson's estate, and purportedly to Dr. Forman's ex-wife.

51.     Defendants contend the wire transfer request is proof of payment of the $60,000 purchase price, but the originator of the request was Beplate, the originator's address belongs to UHP (10624 S. Eastern Ave. Ste. A # 290, Henderson, Nevada 89052-2983), and a wire transfer was never contemplated by the SPA.

52.     Even if the wire transfer request had not been prepared in reaction to  Dr. Forman's demand letter, it was obviously far too late to comply with the SPA because the SPA required the purchase price to be paid, "on or before July 31, 2015," yet the wire transfer was purportedly sent on behalf of Mr. Anderson's estate, which did not exist until he passed away in August, 2016 (more than a year after the deadline to pay the purchase price expired).

53.     Because the wire purports to be to Dr. Forman's ex-wife, Dr. Forman does not know whether any money was actually wired by the Defendants.  Nevertheless, any such

delinquent payment could not resurrect the SPA when the point of the agreement had been to ensure Dr. Forman paid the tuition in 2015 as ordered by the court.

54.     Moreover, UHP has yet to provide any evidence that Dr. Forman's shares were ever actually issued nevertheless provided to Mr. Anderson or to his estate.

55.     Furthermore, the Estate of Harold Anderson is not and never was a party to the SPA (which does not inure to the benefit of successors, assigns, etc.).

56.     In addition, Dr. Forman chose his remedy when he demanded his shares from UHP (rather than the payment of $60,000 from Mr. Anderson).  Neither UHP nor Mr. Anderson have the right to force Dr. Forman to accept a delinquent payment on an expired contract, especially when payment of the purchase price now amounts to 4% of the current value of the shares and the delay in payment of the purchase price has rendered the payment to his ex-wife completely useless to Dr. Forman.

57.     Upon information and belief, as of the date of the purported wire transfer request, UHP shares were trading at $0.92, indicating the Dr. Forman's 1.6 million shares had a value of nearly $1.5 million.

58.     On February 20, 2019 UHP sent another letter again asserting that the Shares were sold to a third-party and this time attaching the SPA, but again providing no evidence of any issued shares.

59.     Even if the SPA was a proper agreement at one time, it long ago expired, is no longer valid, and cannot be enforced by UHP or the Estate of Mr. Anderson.

### Fraudulent Nature of the Third-Party Sale

60.     Upon information and belief, Defendants, and particularly Beplate, concocted a scheme that was purposely designed to use the Amendment and the SPA to deprive Dr.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Forman of the benefits he was to receive under the Employment Agreement, Amended Employment Agreement and the SPA.

61.     Upon information and belief, Defendants improperly preyed upon Dr. Forman after discovering that Dr. Forman had financial troubles and was fearful that he may be held in contempt should he be unable to comply with a Court Order requiring him to pay the sum of $57,851.00 to satisfy a debt for his child's tuition.

62.     Upon information and belief, Defendants used their positions of power, knowledge, and influence over Dr. Forman to convince him that the only way he would receive the cash he needed would be to sign the Amendment and the SPA.

63.     Upon information and belief, Defendants did so with full knowledge that Dr. Forman had an immediate need for cash, and with the intent to not even pay the $60,000 due under the SPA.

64.     In the event that Mr. Anderson was anything other than a straw man used by Beplate to imitate a third party, Beplate and Mr. Anderson shared a commonality of interest and were at all times following the same plan or scheme to deprive Dr. Forman of the money and shares he was entitled to form UHP.

65.     Upon information and belief, Defendants scheme has allowed them to avoid paying Dr. Forman any money or issuing Dr. Forman any stock, even after the SPA expired.

66.     Upon information and belief, thereafter, pursuant to Defendants' scheme, Anderson was prepared to serve as Beplate's pawn undercutting Dr. Forman's eventual demand for the purchase price or the stock by either repudiating the SPA or making the delinquent payment of the purchase price if justified by the value of the Dr. Forman's

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

shares.  Mr. Anderson was a perfect pawn because he would not be alive long enough to testify as a witness to Beplate's scheme.

67.     Even after he passed away, Mr. Anderson still served Beplate's purposes. Following Dr. Forman's demand for the shares more than four years following the anticipated closing for the SPA, when the shares were worth an approximate total of $1,472,000, upon information and belief, Mr. Beplate, without any authority from his deceased father-in-law, or form his estate, purported to draft an outgoing wire request to pay for the shares on behalf of the Estate of Harold D. Anderson.

68.     Upon information and belief, Beplate's wire transfer request was another part of his fraudulent scheme to maintain Dr. Forman's shares for the Defendants.  The wire transfer has not been supported by any other evidence such as a stock ledger transfer to demonstrate that the Shares were actually issued to Dr. Forman, or a power of attorney to demonstrate that Mr. Beplate was authorized to make a payment for the shares on behalf of the third-party buyer's estate.

69.     Further, the SPA did not inure to the benefit of Mr. Anderson's assigns, successor or estate, and thus, was no longer valid.

70.     Upon information and belief, Defendants never intended for Dr. Forman to receive either the 1,600,000 shares or the $60,000, and they were counting on their failure to pay causing Dr. Forman further damages and crippling his ability to bring legal action to enforce his rights.

71.     Furthermore, upon information and belief, Beplate intended to further cause Dr. Forman further troubles by first lying to the school about a wire payment he allegedly

sent to the school (when he did not even know the wiring information), and second advising

the school the Dr. Forman's wife instructed the non-payment of the wire.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment that the Amendment is Unenforceable)

72.     Plaintiff repeats and realleges each and every allegation contained in the

above paragraphs as if set forth fully herein.

73.     A justifiable controversy exists between Dr. Forman and the Defendants

regarding the validity and enforceability of the Amendment and SPA.

74.     Dr. Forman's position is that the Amendment cannot be a valid contract

because UHP gave no consideration except for the duties it was already required to perform

under the employment Agreement.

75.     Dr. Forman also contends that the SPA is unenforceable because upon

information and belief, neither party performed, the buyer died, and UHP never even issued

the stock.  Thus, no money was paid and no stock was delivered at or near the time the

contract was entered, despite the contractual requirement that the purchase price be paid by

July 31, 2015.   As such, the SPA expired on its own terms in 2015.

76.     Defendants apparently argue that Dr. Forman had no further rights to his

shares once he executed the SPA in 2015, and that by wiring the purchase price to Dr.

Forman's ex-wife in 2019 (following their receipt of Dr. Forman's demand letter), allegedly

on behalf of the deceased buyer's estate, that Beplate somehow breathed new life into the

SPA.

77.     This dispute over the validity of the Amendment and the SPA is ripe for

judicial determination.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

78.    As such, Dr. Forman requests that this Court determine the parties relative right under the Employment Agreement, Amendment and SPA.

## SECOND CLAIM FOR RELIEF

### (Breach of the Employment Agreement – Against Defendant UHP)

79.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

80.    The Employment Agreement is a valid, binding and enforceable contract between Dr. Forman and UHP.

81.    Pursuant to the Employment Agreement, UHP was required to issue Dr. Forman 3,000,000 shares of common stock of United Health Products, Inc. for services Dr. Forman had previously rendered to UHP.

82.    At all times subsequent to entering into the Employment Agreement, UHP was obligated to issue Dr. Forman 3,000,000 shares of its common stock.

83.    Pursuant to the Employment Agreement, UHP promised to pay Dr. Forman a monthly salary of $5,000.00 per month.

84.    Dr. Forman performed all of his obligations under the Employment Agreement for over seven months.

85.    All conditions precedent to UHP's obligations to issue the stock and pay the salary had been satisfied or excused, but UHP breached the Employment Agreement by failing to issue the 3,000,000 shares to Dr. Forman and by failing to pay him at least $35,000 in salary.

86.    UHP's breach of the Employment Agreement was not excused.

87.    As a result of the foregoing, Dr. Forman has been damaged in an amount to be determined at trial, but in no event less than $2,795,000, together with interest thereon.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

### THIRD CLAIM FOR RELIEF
#### (Breach of the Amendment to the Employment Agreement – Against Defendant UHP)

88.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

89.     In the event the Court finds the Amendment to the Employment Agreement to be a valid contract, then the Amended Employment Agreement was a valid, binding and enforceable agreement entered by Dr. Forman and UHP.

90.     Pursuant to the Amended Employment Agreement, UHP was obligated to issue Dr. Forman 1,600,000 shares of common stock of United Health Products, Inc.

91.     There were no conditions precedent to UHP's obligation to issue the 1.6 million shares to  Dr. Forman.

92.     Dr. Forman performed all of his obligations under the Amended Employment Agreement.

93.     Defendant UHP breached the Amended Employment Agreement by failing to issue the 1,600,000 Shares to Dr. Forman.

94.     UHP failure to perform was not excused.

95.     As a result of the foregoing, Dr. Forman has been damaged in an amount to be determined at trial, but in no event less than $1,472,000, together with interest thereon.

### FOURTH CLAIM FOR RELIEF
#### (Tortious Breach of Implied Covenant of Good Faith and Fair Dealing)
#### (Against Defendant UHP)

96.     Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

97.     Every contract in Nevada contains an implied covenant to act in good faith in performance and enforcement of the contract;

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

98.     Dr. Forman had a justifiable expectation to receive millions of shares of stock from UHP in return for his years of service to UHP, as set forth in the Employment Agreement.

99.     Dr. Forman and UHP had developed a relationship of trust and confidence whereby Dr. Forman believed that UHP would at the very least comply with the spirit of the employment agreement and not intentionally take advantage of him.

100.     UHP demonstrated that Dr. Forman's trust was well placed when the Employment Agreement was entered and Dr. Forman was promised 3 million shares of stock for the work that he had previously devoted to UHP.

101.     As such, Dr. Forman also trusted UHP to pay his salary under the Employment Agreement at some point in the future even though it was not paid on a monthly basis.

102.     Dr. Forman performed his services under the Employment Agreement and Amended Employment Agreement in good faith and in the spirt of those agreements.

103.     UHP's conduct, however, was unfaithful to the spirit of the Employment Agreement or alternatively, the spirit of the Amended Employment Agreement, because UHP has sought to deprive Dr. Forman of the benefits previously bestowed upon him in the Employment Agreement.

104.     For example, UHP showed bad faith by using the personal financial information it had gathered about Dr. Forman, in an attempt to convince Dr. Forman to agree to the Amendment and thereby terminate his employment with UHP and drastically reduce the compensation UHP had agreed was already earned by Dr. Forman.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

105.     UHP also failed to follow the spirit of the Employment Agreement it promised Dr. Forman that he could get the money he needed to avoid being held in contempt if he just signed the Amendment and the SPA, while it actively concealed its relationship with the purported buyer of the stock.  Further, UHP subsequently failed to ensure that the SPA closed per its terms and refused to return Dr. Forman's stock after the SPA expired.

106.     Finally, following the receipt of Dr. Forman's demand letter in February 2019, UHP continued to act in bad faith when it attempted to usurp Dr. Forman's rights to the stock by purporting to wire transfer $60,000 to Dr. Forman's ex-wife on behalf of the deceased buyer's estate!  Even if that payment was made, UHP knew the payment would not serve its intended purpose of paying for tuition in 2015, and would therefore not benefit Dr. Foreman.  UHP apparently made the payment anyway because it also knew the stock was now worth nearly 25 times the $60,000 purchase price.

107.     The payment, if actually made, was intended to benefit UHP and Beplate, not Beplate's deceased father-in-law,  Mr. Anderson, who had passed away approximately 2 years previously.

108.     Upon information and belief, UHP's conduct was intentionally designed to deprive Dr. Forman of his rights to UHP stock and $35,000 in salary, and confer those benefits upon the Defendants at Dr. Forman's expense.

109.     Upon information and belief, the foregoing actions were taken by Defendants with both express and implied malice, as their conduct was clearly intended to harm Dr. Forman (or was at the very least undertaken with a conscious disregard of the rights of Dr. Forman).  Defendants know full well the harm that their retention of Dr. Forman's stock will cause, because upon information and belief, they are trying to enrich themselves by the same

amount (i.e. the value of Dr. Forman's stock, which is presently $2,760,000 at a stock price of 0.92/share).

110.    UHP's bad faith conduct also caused Dr. Forman to incur damages due to his loss of $35,000 in salary, and the costs and expenses incurred to borrow the $60,000 needed to avoid being held in contempt of court.

111.    Defendants' treated Dr. Foreman with oppression, fraud and malice, and their conduct is deserving of a punitive damages award of three times Dr. Forman's compensatory damages as punishment and to deter them from such future conduct.

## FIFTH CLAIM FOR RELIEF
### (Fraud – Against All Defendants)

112.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

113.    Defendants falsely assured Dr. Forman that if he signed the Amendment and the SPA that he would receive the $60,000 he needed to pay his child's tuition and comply with a court order.

114.    Defendants concealed from Dr. Forman the fact that Mr. Harold D. Anderson was Beplate's father-in-law.

115.    Upon information and belief, the Defendants never intended to pay Dr. Forman under the SPA.

116.    The relationship between Beplate and Mr. Anderson and the intent not to pay Dr. Forman pursuant to the Amendment and SPA, were material facts with respect to those agreements and should have been disclosed by Defendants.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

117.    Defendants were aware of the falsity of their misrepresentations and misleading effect of their omissions at all pertinent times.

118.    Dr. Forman relied on the Defendants representations that by entering in to the Amendment and the SPA he would receive the $60,000 he needed to comply with a court order to pay his child's tuition.

119.    Due to the Defendant's fraud, Dr. Forman was damaged in that he was eventually forced to take out a loan for the $60,000 he was never paid. Dr. Forman has also been potentially deprived of 3 million shares of UHP Common Stock because he was duped in to signing the Amendment and the SPA.

120.    More recently, shortly following their receipt of Dr. Forman's demand letter, Defendants misrepresented the status of the SPA Agreement, and attempted to convert Dr. Forman's stock by allegedly paying the $60,000 purchase price on behalf of the deceased buyer's estate. The Defendants fraud is apparent given the total lack of evidence provided to indicate that Dr. Forman's shares were ever issued or that payment was ever made pursuant to the terms the SPA.

121.    Upon information and belief, the foregoing fraudulent actions were intentionally taken by Defendants with both express and implied malice, and the clear intent to harm Dr. Forman (or was at the very least with a conscious disregard of the rights of Dr. Forman). Defendants know full well the harm that their retention of Dr. Forman's stock will cause, because they are trying to enrich themselves be the same amount (i.e. the value of Dr. Forman's stock, which is presently about $2,760,000 at a stock price of 0.92/share).

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

122.    Defendants' treated Dr. Foreman with oppression, fraud and malice, and their conduct is deserving of a punitive damages award of three times Dr. Forman's compensatory damages as punishment and to deter them from such future conduct.

## SIXTH CLAIM FOR RELIEF
### (In the Alternative – Tortious Interference With Contract – Beplate)

123.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

124.    The Employment Agreement was a valid and existing contract between Dr. Forman and UHP.

125.    At all pertinent times, Beplate had knowledge of the Employment Agreement.

126.    Upon information and belief, Beplate performed intentional acts that were intended or designed to disrupt the contractual relationship between UHP and Dr. Foreman. For example Beplate refused to allow UHP to comply with its contractual duty to issue Dr. Forman the stock required by the Employment Agreement.  Beplate also refused to allow UHP to pay Dr. Forman's salary, which worsened the Dr. Forman's financial predicament and led to the signing of the Amendment.

127.    As a result of Beplate's actions, the contract was never performed by UHP and was entirely disrupted.

128.    Beplate's disruption of the Employment Agreement was unjustified and unrelated to UHP's business with Dr. Forman.

129.    As a result of Beplate's actions, Dr. Forman has been damaged in that he has been deprived of 3,000,000 shares of UHP stock and $35,000 in monthly salary payments that were due under the Employment Agreement.

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

130.    Upon information and belief, the conduct was intended to injure Dr. Forman and was undertaken with a conscious disregard of the rights of Dr. Forman.   Defendants' acts were wanton, intentional, and malicious.

131.    As a result of the foregoing, Dr. Forman has been damaged in an amount to be determined at trial, but in no event less than $2,760,000, together with interest thereon.

132.    Defendants conduct also justifies an award of punitive damages in the amount of $8,385,000 to punish Defendants and deter such conduct.

### SEVENTH CLAIM FOR RELIEF
### (Unjust Enrichment – Against All Defendants)

133.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

134.    Dr. Forman conferred a benefit upon UHP by providing years of service in multiple roles.   UHP acknowledged the beneficial nature of Dr. Forman's services by agreeing to issue him 3,000,000 shares of stock for the work performed prior to November 10, 2014.

135.    UHP also acknowledged its appreciation of the benefits of Dr. Forman's work by agreeing to pay him a salary of $5,000 per month for his future services to UHP.

136.    UHP accepted and retained such benefits.

137.    UHP failed and refused to remunerate Dr. Forman or compensate him for the services he provided to UHP.

138.    It would be unfair and inequitable for UHP to retain the benefits conferred without payment of a reasonable value therefore.

139.    Due to the unjust enrichment of UHP, Dr. Forman has been damaged in an amount to be determined at trial.

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MARQUIS AURBACH COFFING

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

### EIGHTH CLAIM FOR RELIEF
### (For Imposition of a Constructive Trust – Against All Defendants)

140.    Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as if set forth fully herein.

141.    A confidential relationship developed between Dr. Forman, and the Defendants during the years that Dr. Forman served UHP.

142.    Upon information and belief, Defendants have asserted legal title to all or part of the 3,000,000 shares that should rightfully have been issued to Dr. Forman as specified in the Employment Agreement.

143.    The Defendants' retention of legal title under these circumstances, where Defendants already agreed that Dr. Forman had earned those shares, would be inequitable.

144.    The application of a constructive trust over Dr. Foreman's shares and any proceeds that the Defendants received or will in the future receive from the sale of those shares, is essential to the effectuation of justice in this case.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants as follows:

(a)    On the First Cause of Action, for an order declaring that the Stock Purchase Agreement had expired by its own terms in 2015 due to lack of performance by the parties, and declaring that the Amendment to the Employment Agreement is unenforceable for lack of consideration because UHP's duties under the Amendment were preexisting duties it was already obligated to perform under the Employment Agreement;

(b)    On the Second Cause of Action, Breach of the Employment Agreement, for judgment in favor of Dr. Forman and against Defendant UHP, in an amount to be determined at trial, but in no event less than $2,795,000, together with interest thereon;

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

(c)     On the Third Cause of Action, for Breach of the Amended Employment Agreement, for judgment in favor of Dr. Forman and against Defendant UHP, in an amount to be determined at trial, but in no event less than $1,472,000, together with interest thereon;

(d)     On the Fourth Cause of Action, for Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, for judgment in favor of Dr. Forman and against UHP, in an amount to be determined at trial, but in no event less than $2,795,000, together with interest thereon, plus punitive damages in the amount of $8,280,000;

(e)     On the Fifth Cause of Action, Fraud, for judgment in favor of Dr. Forman and against all Defendants, in an amount to be determined at trial, but in no event less than $2,795,000, together with interest thereon, plus punitive damages in the amount of $8,280,000;

(f)     On the Sixth Cause of Action, Tortious Interference, for judgment in favor of Dr. Forman and against Beplate, in an amount to be determined at trial, but in no event less than $2,795,000, together with interest thereon, plus punitive damages in the amount of $8,280,000;

(g)     On the Seventh Cause of Action, Unjust Enrichment, for judgment in favor of Dr. Forman and against UHP for the reasonable value of Dr. Forman's services, in an amount to be determined at trial, together with interest thereon;

(h)     On the Eighth Cause of Action, Imposition of a Constructive Trust, for an order establishing an equitable constructive trust over any of Dr. Forman's shares or any proceeds therefrom in the custody or control of any of the Defendants;

(i)     For an award of attorneys fees and costs; and

(j)     For any and all other legal and equitable relief as may be available under law and which the Court may deem just and proper.

/ / /

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Phillip Forman hereby demands a trial by jury on all issues in this case.

Dated this 27th day of March, 2019

MARQUIS AURBACH COFFING

By     */s/ Scott A. Marquis, Esq.*
Scott A. Marquis, Esq.
Nevada Bar No. 6407
10001 Park Run Drive
Las Vegas, Nevada  89145

CARMEL, MILAZZO & DICHIARA, LLP
Ross David Carmel, Esq.
New York Bar No. 4686580
*Pro Hac Vice* Forthcoming
55 West 39th Street, 18th Floor
New York, NY 10018

Attorneys for Plaintiff, Phillip Forman

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

Forman v. UHS et al. - 15566-0013/27/2019 9:18 AM