UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PHILLIP FORMAN,

          Plaintiff,

vs.

UNITED HEALTH PRODUCTS, INC., *et al.*,

          Defendants.

Case No.: 2:19-cv-00519-GMN-VCF

**ORDER**

Pending before the Court is Defendants Douglas K. Beplate's ("Beplate") and United Health Products, Inc.'s ("UHP") (collectively, "Defendants'") Motion for Summary Judgment, (ECF No. 40). Plaintiff Phillip Forman ("Plaintiff") filed a Response, (ECF No. 47), to which Defendants filed a Reply, (ECF No. 49).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 42). Defendants filed a Response, (ECF No. 46), to which Plaintiff filed a Reply, (ECF No. 48).

For the reasons discussed below, the Court **DENIES** Defendants' Motion for Summary Judgment and **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment.

**I.**     <u>**BACKGROUND**</u>

This case concerns contract- and fraud-based claims relating to an alleged breach of an employment agreement. Plaintiff is a retired physician. (Compl. at 3, ECF No. 1). Defendant UHP sells hemostatic products. (*Id.*). Defendant Beplate is the current CEO of UHP. (*Id.*).

On November 10, 2014, Plaintiff and UHP entered into an Employment Agreement (the "Employment Agreement"), whereby Plaintiff served as the Chairman of the Board and Chief

Medical Advisor for UHP in exchange for a salary of $5,000 per month. (*Id.*). The Employment Agreement further provided that 3 million shares of UHP common stock would be issued to Plaintiff to be received upon execution in exchange for services previously rendered. (*Id.*); (Agreement at 2, Ex. B to Mot. Dismiss ("MTD"), ECF No. 14-3). The Employment Agreement also called for Plaintiff to submit for cancellation the 2 million plus "Old Forman Shares" previously canceled by Plaintiff in 2013. (*Id.*). Plaintiff alleges that UHP failed to issue the 3 million shares of stock and failed to pay the $35,000 owed in salary. (Compl. at 7).

Subsequently, around summer 2015, in a collateral matter, Plaintiff was ordered to pay approximately $60,000 for his child's tuition to be delivered to Plaintiff's ex-wife. (*Id.* at 5–6). Plaintiff alleges that Defendants knew of Plaintiff's financial dilemma and used it to leverage two unenforceable agreements in June and July of 2015. (*Id.*).

On June 25, 2015, Plaintiff and UHP entered into an Amendment (the "Amendment"), whereby Plaintiff no longer served as director/chairman, but solely as a medical advisor to UHP for the sole compensation owed of 1.6 million shares of common stock and $15,000 to be paid in September 2015 ($5,000) and October 2015 ($10,000). (*Id.* at 4); (Amendment at 2, Ex. C to MTD, ECF No. 14-4). Plaintiff alleges that the Amendment is invalid and unenforceable for lack of consideration—specifically, that no consideration was provided by UHP for the return/reduction of shares from 3 million to 1.6 million or the elimination of salary owed for December 2014 through June 2015. (Compl. at 5). Plaintiff further alleges that UHP nonetheless failed to pay the $15,000 owed. (*Id.*).

On July 22, 2015, Plaintiff and Harold D. Anderson ("Anderson"), now deceased, entered into a Stock Purchase Agreement (the "SPA"), whereby Anderson purchased Plaintiff's 1.6 million shares of common stock of UHP for $60,000 to be paid on or before July 31, 2015, and directly to Plaintiff's ex-wife. (*Id.* at 5–6); (SPA, Ex. G to MTD, ECF No. 14-8). Plaintiff alleges that at the time of the Amendment, the shares were worth approximately $144,000.

(Compl. at 7).  Plaintiff further alleges that the SPA expired because the $60,000 was not paid by the mandated date and that, as a result, he was forced to obtain a loan to pay the tuition. (*Id.*).

On February 11, 2019, Plaintiff sent UHP a formal demand for issuance of his shares and payment of amounts owed. (*Id.* at 8).  On February 15, 2019, UHP responded that Plaintiff sold his shares to a third party and attached an outgoing wire request, dated February 14, 2019, by Beplate on behalf of Anderson's estate to Plaintiff's ex-wife in the amount of $60,000. (*Id.*). Anderson is Defendant Beplate's father-in-law, who passed away in or about August 2016. (*Id.*).

Plaintiff thereafter filed the underlying Complaint against Defendants alleging eight claims for relief: (1) declaratory judgment that the Amendment is unenforceable; (2) breach of the Employment Agreement against UHP; (3) breach of the Amendment against UHP; (4) tortious breach of the implied covenant of good faith and fair dealing against UHP; (5) fraud; (6) tortious interference with contract against Beplate (in the alternative); (7) unjust enrichment; and (8) imposition of a constructive trust. (Compl. at 12–21).  On March 19, 2020, this Court denied Defendants' Motion to Dismiss, (ECF No. 14).  Plaintiff and Defendants thereafter filed cross-Motions for Summary Judgment. (*See* Defs.' Mot. Summary Judgment ("MSJ"), ECF No. 40); (*see also* Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 42).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

The Court first addresses Plaintiff's Motion for Summary Judgment before turning to Defendants' Motion for Summary Judgment.

### A. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (ECF NO. 42)

Plaintiff seeks summary judgment on the first and second causes of action alleged in his Complaint—specifically, (1) declaratory judgment that the Amendment is unenforceable; and (2) breach of the Employment Agreement. (Compl. ¶¶ 72–87). The Court analyzes each cause of action in detail below.

#### 1. Declaratory Judgment that the Amendment is Unenforceable

Plaintiff argues that the Amendment is void and invalid because neither party furnished adequate consideration for the purported reduction in shares. (Pl.'s MSJ 4:20–6:6). Specifically, Plaintiff asserts that he was already owed the 3,000,000 shares in consideration of past services provided by him to UHP. (*Id.* 5:28–6:2). Defendants argue, in response, that Plaintiff's resignation as Chairman of the Board provided sufficient consideration for the Amendment. (Defs.' Resp. to Pl.'s MSJ 6:1–7:11).

"Parties may mutually consent to enter into a valid agreement to modify a former contract." *Clark Cty. Sports Enterprises, Inc. v. City of Las Vegas*, 606 P.2d 171, 175 (Nev. 1980). In addition to mutual consent to the modification, parties must also have "additional consideration . . . to . . . modify the existing contract between the parties." *Ins. Co. of the W. v. Gibson Tile Co.*, 122 Nev. 455, 134 P.3d 698, 703 (Nev. 2006) (en banc). "Consideration is the exchange of a promise or performance, bargained for by the parties." *Jones v. SunTrust Mortg., Inc.*, 128 Nev. 188, 274 P.3d 762, 764 (Nev. 2012) (en banc). However, "[c]onsideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do." *Cty. of Clark v. Bonanza No. 1*, 96 Nev. 643, 615 P.2d 939 (1980).

Here, Defendants had a preexisting duty to issue the three million shares to Plaintiff. The Employment Agreement explicitly states, "[t]he 3,000,000 shares shall be deemed validly issued, fully paid and non-assessable *in exchange for services previously rendered*." (Employment Agreement at 2, Ex. A to Pl.'s MSJ, ECF No. 42-1) (italics added). Pursuant to the explicit terms of the Employment Agreement, Defendants were required to provide to Plaintiff the three million shares prior to the Amendment. (Decl. of Phillip Forman ("Forman Decl.") ¶ 11, ECF No. 42-1). Defendants' promise in the Amended Agreement to issue 1.6 million shares of the three million shares already promised to Plaintiff was, therefore, not supported by adequate consideration. *See Cty. of Clark v. Bonanza No. 1*, 96 Nev. 643, 650-51, 615 P.2d 939, 944 (1980) ("Consideration is not adequate when it is a mere promise to perform that which the promisor is already bound to do."). Of note, Defendants argue that Plaintiff provided adequate consideration by resigning from his position as chairman of the Board; however, fail to address Plaintiff's argument that Defendants failed to provide adequate consideration for the Amendment by promising to issue shares already entitled to Plaintiff. (Defs.' Resp. to Pl.'s MSJ 6:1–7:11). Given that Defendants had an existing obligation to issue the three million shares, the Amended Agreement was not supported by adequate consideration and is, thus, void. The Court accordingly grants Plaintiff summary judgment as to his first cause of action—declaratory judgment that the Amendment is unenforceable.

### 2. Breach of the Employment Agreement

Plaintiff additionally seeks summary judgment as to his second cause of action, namely that Defendant UHP breached the Employment Agreement. (*See* Compl. ¶¶ 79–87). Specifically, Plaintiff argues that Defendant UHP failed to issue the three million shares and failed to pay him $35,000.00 in monthly salary, as promised in the Employment Agreement. (*See* Pl.'s MSJ 6:7–7:11). Defendants, in response, contend that the Stock Purchase Agreement

superseded the Employment Agreement and thus, does not constitute breach. (*See* Defs.'s Resp. to Pl.'s MSJ 4:1–5:6).

As a preliminary matter, the Court finds that the Stock Purchase Agreement does not relate to the Employment Agreement such that the Stock Purchase Agreement cannot supersede the Employment Agreement. The Stock Purchase Agreement states that "[t]his Agreement constitutes the entire agreement by the parties hereto and supersedes any other agreement, whether written or oral, that may have been made or entered into between them relating to the matters contemplated hereby." (*See* Stock Purchase Agreement at 2, Ex. I to Defs.'s MSJ, ECF No. 40). Only Plaintiff and Harold Anderson, however, entered into the Stock Purchase Agreement—nowhere is Defendant UHP mentioned in the Stock Purchase Agreement. (*See id.*). "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 764 (2002). Because Defendant UHP is not a party to the Stock Purchase Agreement, the Employment Agreement does not constitute a prior agreement that could have been superseded by the Stock Purchase Agreement.

Though Defendants' argument fails, Plaintiff nevertheless fails to demonstrate that summary judgment is proper as to its breach of contract claim. Under Nevada law, a breach of contract claim has three elements: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage as a result of the breach. *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)). Here, the parties do not dispute that the Employment Agreement is a valid contract. (*See* Pl.'s MSJ 6:25–7:3); (*see also* Defs.' Resp. to Pl.'s MSJ 4:5–7). Plaintiff additionally demonstrates that he was damaged by the alleged loss of compensation via shares and monthly salary. (*See* Pl.'s MSJ 7:7–9).

Plaintiff, however, fails to provide any authority supporting its allegation that Defendants breached the Employment Agreement. Plaintiff broadly asserts that UHP breached

the Employment Agreement by failing to issue the three million shares to Plaintiff and failing to pay him the $35,000 in monthly salary. (*See* Pl.'s MSJ 7:4–6). Critically, however, Plaintiff does not provide any evidence to support its overarching allegation. Plaintiff, as the movant for summary judgment, has the burden to demonstrate that "there is no genuine dispute at to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a) (emphasis added). Specifically, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. Pro. 56(c)(1). Because Plaintiff must provide more than a mere allegation to demonstrate that Defendants unequivocally breached the contract, the Court accordingly denies Plaintiff's Motion for Summary Judgment as to his breach of contract claim.[1]

**B. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (ECF NO. 40)**

Defendants seek summary judgment on Plaintiff's alleged defense of economic duress, specifically arguing that (1) Plaintiff's duress claim is frivolous and (2) the timing of the payment should not void the contract. (*See* Defs.' MSJ at 7–8). According to Defendants, Plaintiff claims that he may avoid two contractual amendments because of economic duress. (*Id*. 7:5–6). Plaintiff, in response, argues that Defendants do not seek summary judgment on

---

[1] Plaintiff provides evidence, in his Reply, that Anderson materially breached the SPA. (Pl.'s Reply to Pl.'s MSJ 7:4–13). The SPA explicitly states that Anderson must pay Plaintiff on or before July 31, 2015. (*See* Stock Purchase Agreement, Ex. 1 to Defs.' MSJ, ECF No. 40-10). Plaintiff cites to the Wire Transfer dated February 14, 2019, to demonstrate that Anderson untimely paid in material breach of the contract. Such argument, however, is unrelated to Plaintiff's argument in its Motion for Summary Judgment—namely, that Defendants breached the *Employment Agreement*. (*See* Pl.'s MSJ 6:7–7:11).

any cause of action and instead, focus on disputing the alleged duress claim, which Plaintiff alleges is "a secondary theory towards the unenforceability of the Attempted Reduction." (*See* Pl.'s Resp. to Defs.' MSJ 10:8–9). The Court addresses each of Defendants' arguments below.

### 1. Economic Duress

Defendants first argue that Plaintiff cannot legally claim economic duress to avoid two contractual amendments to the Employment Agreement. (Defs.'s MSJ 7:5–8:2). In response, Plaintiff argues that Defendants fail to identify which of Plaintiff's claims they seek summary judgment on. (Pl.'s Resp. to Defs.' MSJ 10:6–9). Nevertheless, Plaintiff additionally argues that Defendants have not met their burden in demonstrating the lack of genuine dispute of material fact as to the alleged economic duress claim because: (1) Defendants rely on the incorrect standard for economic duress; and (2) Defendants fail to demonstrate economic duress under Nevada law. (Pl.'s Resp. to Def.'s MSJ 9:6–11:25). In their Reply, Defendants argue that Plaintiff claimed a theory of economic duress as illustrated in Paragraphs 29, 60, and 61 in his Complaint. (Reply to Defs.'s MSJ 4:13–17).

As a preliminary matter, the Court finds that Plaintiff did not allege economic duress in his Complaint. In Paragraph 29, Plaintiff alleges that "the Amendment was designed by the Defendants to take advantage of the financial dilemma they knew Dr. Forman was in during the summer of 2015, when Forman was required by court order to pay his child's nearly $60,000 tuition payment." (*See* Compl. ¶ 29). Nowhere in that statement, however, does Plaintiff explicitly or implicitly allege an economic duress defense. Plaintiff additionally does not allege such defense in the other two paragraphs, namely Paragraphs 60 and 61. There, Plaintiff alleges that Defendants, particularly Beplate, concocted a scheme to purposefully deprive Dr. Forman and prey on him after discovering Dr. Forman had financial troubles pursuant to the court order. (*See id*. ¶¶ 60–61). Upon review of Plaintiff's Complaint, the Court does not find Plaintiff alleged an economic duress defense.

More critically, Defendants fail to explain how the theory of economic duress applies to Plaintiff's alleged causes of action. "Economic duress can excuse an innocent party's contractual obligations when the other contracting party does 'a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.'" *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1119 (9th Cir. 2018) (citing *Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 204 Cal. Rptr. 86, 89 (Ct. App. 1984)).

Here, Defendants argue that Plaintiff is not an "innocent party" and further, that Defendants did nothing wrong to provoke the contempt order for child support. (*See* Defs.' MSJ 7:23–24). As explained by Defendants, Plaintiff seeks to raise economic duress as a defense. Economic duress is an excuse to breach of contract. *See also Braun v. Nevada Land, LLC*, No. 57434, 2013 Nev. Unpub. LEXIS 149, 2013 WL 461254, at *2 (Nev. Feb. 5, 2013) (recognizing an economic-duress defense to contract formation) (unpublished). Plaintiff, however, does not allege in the Complaint that he breached the Employment Agreement. Plaintiff alleges that Defendants breached by failing to pay him his owed shares and monthly salary. (Compl. ¶¶ 79–87). Defendants fail to explain with sufficient detail not only how the alleged economic duress defense applies to this case but also, how summary judgment is thus appropriate as to the breach of contract claim. *Hicks,* 897 F.3d at 1119. As the movant for summary judgment, Defendants carry the burden in not only demonstrating that there is no genuine dispute of material fact. Without further explanation, the Court cannot guess Defendants' theory or argument.[2] Accordingly, the Court denies summary judgment as to Defendants' argument concerning economic duress.

---

[2] Plaintiff, in his Response, explains that he was under economic duress not because of the contempt order, but because "Defendants exercised bad faith in the negotiation process by withholding the shares already owned to Dr. Forman and thereby exploited his impecuniousness and forced him to sign the Attempted Reduction." (*See* Pl.'s Resp. to Defs.' MSJ 9:12–15). The Court does not take into consideration Plaintiff's explanation of the theory of economic duress for two reasons. First, Defendants did not allege such theory in their briefing—

### 2. Breach of the Employment Agreement

Defendants additionally argue that Plaintiff cannot void the Employment Agreement based on the timing of payment. (Def.'s MSJ 8:8–28). Defendants, however, do not provide any applicable legal basis for his claim. Defendants rely on a decision from the Second Circuit in *VKK Corp. v. Nat'l Football League*, 244 F3d 114, 122-123 (2nd Cir. 2001). The Second Circuit decision, however, relied on New York law on economic duress, which does not apply in this case. The Employment Agreement explicitly states that Nevada law governs the agreement. (*See* Employment Agreement, Ex. C to Defs.'s MSJ at 5). Defendants do not otherwise provide any additional evidence supporting summary judgment. Under Local Rule 7-2(d), "[t]he failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." D. Nev. Local R. 7-2(d). Because Defendants fail to meet their burden as the movants for summary judgment and otherwise fail to explain how the timing of payment supports granting summary judgment, the Court denies Defendants' Motion for Summary Judgment.

///

---

instead referring to the contempt order as the basis for the economic duress claim. (Defs.' MSJ at 7–8). Second, Defendants had an opportunity to respond to Plaintiff's alleged theory of economic duress; however, provided mere citations to declarations and sparse argument in their Reply. (Defs.' Reply to Defs.' MSJ at 4–5).

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 40), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 42), is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that within twenty-one days of the entry of this Order, the parties shall file a Proposed Joint Pretrial Order.

**DATED** this __14__ day of February, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court