1  **Marquis Aurbach**
   Scott A. Marquis, Esq.
2  Nevada Bar No.6407
   10001 Park Run Drive
3  Las Vegas, Nevada 89145
   Telephone: (702) 382-0711
4  Facsimile: (702) 382-5816
   smarquis@maclaw.com
5

6  Carmel, Milazzo & Feil, LLP
   Michael D. Nacht, Esq.
7  New York Bar No. 4686580
   55 West 39th Street, 18th Floor
8  New York, NY 10018
   MNacht@cmfllp.com
9

10 Attorneys for Plaintiff Phillip Forman

11                **UNITED STATES DISTRICTCOURT**
                      **DISTRICT OF NEVADA**

12 PHILLIP FORMAN, an individual,          Case Number: 2:19-cv-519-~~GMN~~-VCF*

13                        Plaintiff

14      vs.                                    **JOINT PRETRIAL ORDER**

15 UNITED HEALTH PRODUCTS, INC., a
   Nevada domestic corporation; and
16 DOUGLAS K. BEPLATE, an individual,

17                        Defendants

18

19        After pretrial proceedings in this case,

20        IT IS ORDERED:

21 I.     **STATE THE NATURE OF ACTION, RELIEF SOUGHT, IDENTIFICATION
          AND CONTENTIONS OF PARTIES.**

22        A.      **NATURE OF THE ACTION[1]**

23        This is an action to recover compensation alleged to have been promised to Plaintiff

24 under an employment agreement, entered into on or about November 10, 2014 (the

25   _____

26        [1]The following description of the nature of the action incorporates conclusions of fact and law
   determined in a Decision and Order deciding motions for summary judgment, and therefore may not reflect the
27 contentions of the parties prior to such determinations.

28

   _____

   * Counsel are reminded that all documents must bear the correct case number **2:19-cv-00519-CDS-VCF**. ECF No. 65.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

"Employment Agreement") under which the Defendant United Health Products, Inc. ("UHP") is alleged to have failed to perform.  Specifically, the Employment Agreement provides for the issuance of 3,000,000 shares of the common stock of UHP to Plaintiff and the payment of $5,000 per month in salary.  Despite its contractual obligation, Plaintiff contends that UHP failed to issue the 3,000,000 shares and failed to pay a $5,000 per month salary for the months of June 2015 through October of 2015.

The Employment Agreement provides that upon the execution of the same, the "3,000,000 shares shall be deemed validly issued, fully paid and non-assessable in exchange for services previously rendered."  Thus, Plaintiff contends they were fully and previously earned and owned by Dr. Forman.

Thereafter, on or about June 25, 2015, Plaintiff and UHP executed a document ostensibly reducing the number of shares previously earned by Plaintiff from 3,000,000 to 1,600,000 (the "Letter").  However, Plaintiff contends that no consideration was paid to him in exchange for the reduction of shares because 3,000,000 shares were owed to him as a past promise by UHP.  Plaintiff contends because no consideration was paid by UHP to him in exchange for the ostensible reduction, the Letter is not a valid or enforceable contract.

After the close of discovery, Plaintiff and UHP each moved for summary judgment; Plaintiff moved for summary judgment on his breach of contract claim and UHP moved against Plaintiff's contention that he was under economic duress in entering into a certain Stock Purchase Agreement dated July 22, 2015 (the "SPA").  By Decision and Order dated February 14, 2022 (the "Order"), the Court denied UHP's motion for summary judgment.  The Court granted Plaintiff's motion in part and denied in part.  Specifically, the Court ruled that the Letter was unenforceable for lack of consideration and granted summary judgment on Plaintiff's motion for summary judgment for such a declaratory judgment.  The Court denied

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

that portion of Plaintiff's motion seeking summary judgment on its claim for breach of the Employment Agreement, finding that Plaintiff did not establish through evidence on the motion that UHP failed to issue the 3,000,000 shares and that the salary was not paid, leaving those issues for trial.

Finally, Plaintiff also asserts a fraud claim (and will move, following the introduction of all pertinent testimony, to conform the Complaint to the evidence to have determined claims for conversion and tortious interference) in connection with the SPA, asserting that all of the circumstances, including but not limited to the negotiation, entry, and ostensible payment thereunder were part of a fraudulent scheme by Defendant Douglas Beplate ("Beplate"). Plaintiff claims that Beplate's removed the shares from Plaintiff's name, in his capacity as CEO and/or chairman of the Board of Directors of UHP, prior to payment being made under the SPA, and even before the SPA was entered into, hid them in the name of a company called Enable Financial LLC, and then transferred them to his father-in-law, and upon information and belief, thereafter to himself, without the purchase price under the SPA ever having been paid.

### B.    RELIEF SOUGHT

In this action, Plaintiff seeks the following relief: (i) declaratory judgment declaring that the Letter is unenforceable; (ii) damages for UHP's breach of the employment agreement, equaling 3,000,000 shares of the common stock of UHP, $15,000, together with interest thereon; and (iii) punitive damages equal to three times the compensatory damages awarded at trial or such other amount be determined at trial.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

**C.      IDENTIFICATION AND CONTENTION OF THE PARTIES**

     **1.      Plaintiff**

Plaintiff is an individual residing in the state of Florida.[2]  He is a former employee of Defendant UHP; under the Employment Agreement he served as its Chairman of the Board of Directors and as its Chief Medical Advisor.  The Employment Agreement provided for certain compensation to be paid to Plaintiff; specifically Plaintiff was to receive a salary of $5,000 per month and 3,000,000 shares of the common stock of UHP in consideration of past services performed (and in connection with his cancelling 2,750,000 options and 2,090,000 shares of common stock which he had previously earned).  Plaintiff contends that UHP never paid him his salary for the months of June 2015 through October of 2015 and never issued him the 3,000,000 shares.  Plaintiff contends that all of his compensation remains due and owing to him.

Plaintiff had also contended that a June 25, 2015 ostensible agreement, known throughout this case as the Letter, which was meant by UHP and Beplate to reduce the shares owed to him under the Employment Agreement from 3,000,000 to 1,600,000 was not a valid contract and was void and unenforceable for a lack of consideration.  This issue has been decided in favor of Plaintiff on summary judgment, whereupon this Honorable Court ruled that the Letter was unenforceable and that Plaintiff was entitled to the 3,000,000 shares set forth in the Employment Agreement.

The Letter, unusually, recited that the 1,600,000 shares were to be sold in a third-party transaction; referring to the SPA eventually entered into between Plaintiff and Harold D. Anderson ("Anderson").  Plaintiff contends that Beplate, for himself and through the use of UHP perpetrated a fraud against Plaintiff.  Plaintiff contends that Beplate, knowing of Plaintiff's financial hardship due to, *inter alia*, a tuition bill for his daughter in the amount of $60,000, developed and perpetrated a scheme to steal Plaintiff's UHP stock.  Specifically, in or about the end of June of 2015, knowing that Plaintiff was under financial stress, and in

---

[2] When this lawsuit was initiated, Dr. Forman was a resident of Rego Park, New York.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

connection with the (unenforceable) Letter, Beplate ostensibly "found" a buyer for Plaintiff's UHP shares.  Beplate presented Plaintiff with the SPA which recited that Plaintiff would sell 1,600,000 shares of UHP common stock[3] to a buyer whose name was not even recited in the SPA but only provided his name under the signature line.  The ostensible buyer was Harold Anderson, who was the father-in-law of Beplate.

Plaintiff contends that Beplate never advised him that Harold Anderson was his father-in-law.  Plaintiff further contends that Mr. Anderson was listed on the SPA in name only, that he was never involved in the negotiation of the SPA, never agreed to the terms thereof, and had no involvement whatsoever in the same.  Plaintiff further contends that Beplate never intended that the shares would ultimately end up owned by Anderson and contends that Beplate intended to take ultimate possession of the shares.  Plaintiff even further contends that Beplate never intended to cause payment to be made to Plaintiff under the SPA.  Plaintiff contends that Anderson was a cutout for Beplate, inserted in the SPA in name only, as a person with a close relationship with Beplate such that Beplate could use his name and status as an independent individual for the purposes of removing the shares from Plaintiff's name and into the name of a person, Anderson, from whom the shares could eventually be transferred to Beplate (if ever transferred to Anderson at all).

Ultimately, Plaintiff contends that the purchase price under the SPA was never made, and certainly not timely made.  Payment was ostensibly made by Beplate, not by Anderson or on behalf of his estate[4] three and one-half years after payment was due under the SPA and after Plaintiff chose his remedy.  Plaintiff rejected this late payment.  Plaintiff contends that Beplate had the shares transferred out of Plaintiff's name even before the SPA was entered into (and drafted the SPA such that payment was to be made to Plaintiff's estranged wife) such that Plaintiff could not object and retain his shares in the event, pre-conceived by Beplate,

---

[3] The 1,600,000 shares represented the ostensible holdings of Plaintiff as a result of the Letter, which has since been ruled unenforceable for lack of consideration.

[4] Plaintiff further contends that the SPA did not inure to the benefit of Anderson's estate, relatives, or any entity or individual other than Anderson, and that upon Anderson's passing, the SPA became void.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

that the purchase price was never paid.  Plaintiff contends that the shares should have remained in his name, and not preemptively taken away from him.  The shares were his to exercise dominion and control over, relevantly in the instance where a contract for the sale of same was breached, and Beplate's conduct was designed to deprive Plaintiff of his property.

In this regard, Plaintiff contends that Beplate's actions constituted a conversion of his shares.  Plaintiff contends that any shares issued to him, which he (at least allegedly) "contracted" to sell, were his and should have remained in his name.  The SPA stated that the sale of the shares was to be settled on a delivery versus payment basis, meaning the shares were not to be tendered unless and until the purchase price was paid.  It was Plaintiff's right to keep the shares in the event that the SPA purchase price was not paid, or if his performance thereunder was otherwise excused and Beplate exercised dominion and control over the shares while they still belonged to Plaintiff to his detriment.  Specifically, Beplate put himself in control of what happened to the shares after the SPA was breached, irrespective of the rights of Plaintiff.

### 2.    **Defendants**

Defendant UHP is a corporation formed and existing under the laws of the State of Nevada.  It is in the business of, *inter alia*, the sale of hemostatic products.

Defendant Beplate was the Chief Executive Officer during the course of the Employment Agreement and was the Chief Executive Officer and a member of the Board of Directors of UHP at the time the Letter was executed.

Defendants contend that Plaintiff failed to perform his duties as Chief Medical Officer under the Employment Agreement (e.g. by failing repeatedly to appear as UHP's main presenter at critical meetings in 2015 due to his uncontrolled substance abuse, among other reasons).

Defendants contend that the Plaintiff agreed to accept the reduced consideration of 1.6 million shares of stock in consideration of his reduced corporate responsibilities and the

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

allowance of a graceful exit from the company.  Defendants also contend that Plaintiff received consideration through the expedition of receiving cash for his shares through the efforts of Beplate in finding a buyer for shares, as these shares were restricted and could not be easily liquidated at the time, and Plaintiff had gotten himself into a position of financial need despite his status as a high-earner.

Defendants contend that Plaintiff was in fact tendered the 1.6 million shares, and he swore to that fact in open Court in a Child Support Proceeding.

Defendant asserts that Plaintiff approached Beplate for help regarding his financial situation.  Namely, Plaintiff required $60,000 to satisfy a judgment requiring Plaintiff to pay for his daughter's tuition.  Accordingly, Beplate agreed to find a buyer for Plaintiff's 1.6 million shares.  His first attempt was to sell the shares through Enable Financial LLC, but eventually, Enable was unable to sell the shares.  Only thereafter did Beplate engage his step-father Anderson to purchase the shares from Plaintiff.

On or about July 22, 2015, Plaintiff entered into a Stock Purchase Agreement with Anderson. Defendants contend that Plaintiff sold his 1.6 million shares to the Anderson for the sum of $60,000 to address a contempt proceeding for Child Support.

Some time thereafter, Anderson died and his 1.6 million shares in UHP were passed to Beplate.

Defendants contend that Plaintiff executed each of the agreements subject to this matter; the Employment Agreement, the Amendment, and the SPA, of his own free will as befitting his personal circumstances contemporaneous.  Furthermore, Defendants contend that Plaintiff was not under financial duress, as shown by various sources, including a statement from the IRS.  Defendants assert that Plaintiff, as former Chairman of the Board and Chief Executive Officer knew or should have known that Anderson, an existing shareholder at the time the SPA was executed, was the stepfather of Beplate.

Defendants contend that the factual timeline shows that Plaintiff, unbeknownst to Defendants, used his dealings with UHP to both violate SEC rules and commit bankruptcy fraud; for instance, Plaintiff, while serving as Chairman of the Board and Chief Executive

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

Officer of UHP, declared personal bankruptcy in May 2013, concealed that fact from UHP and omitted it from his Sarbanes-Oxley Certification of UHP's Form 10-K filed in April 2014 in violation of SEC rules.  In July 2013, two months after declaring personal bankruptcy, Plaintiff volunteered to forfeit over 2 million shares of stock, 2.75 million options, and $285,100 in unpaid cash salary (total value of over $600,000.00 in assets concealed from Plaintiff's personal bankruptcy proceeding) in exchange for a promise to receive new shares in the future.  In August 2014, Plaintiff was discharged from bankruptcy, and then, less than 90 days later, entered into the November 2014 Employment Agreement with UHP. Defendants were not aware of Plaintiff's personal bankruptcy until sometime after the Employment Agreement was executed, and UHP would not have entered into it had they known of the bankruptcy.

## II.    STATE THE FACTS AND CITE THE STATUTES THAT GIVE THIS COURT JURISDICTION OF THE CASE.

This Court has jurisdiction pursuant to 28 U.S.C. §1332(a).  The parties are citizens of different states: at the time the action was filed Plaintiff was a citizen of the State of New York; Defendant Beplate was a citizen of the State of Nevada; and Defendant UHP is a citizen of the State of Nevada.  The amount in controversy exceeds $75,000.

## III.    THE FOLLOWING FACTS ARE ADMITTED BY THE PARTIES AND REQUIRE NO PROOF:

### A.    PLAINTIFF'S STATEMENT

1.    Plaintiff served as the Chairman of the Board of Directors of UHP beginning in 2011 and as CEO of UHP during 2013 and 2014.

2.    On November 10, 2014, Plaintiff and UHP entered into an Employment Agreement whereby Plaintiff would serve as the CEO and Chief Medical Advisor of UHP.

3.    The Employment Agreement is and was at all pertinent times a valid and binding contract.

4.    Under the Employment Agreement, Plaintiff was entitled to a base salary of $5,000 per month.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

5.     In addition, the Employment Agreement provides that Plaintiff was entitled to 3,000,000 shares of the common stock of UHP.

6.     The Employment Agreement further constituted an acknowledgement and understanding between the parties that the shares were being issued to Plaintiff "in exchange for services previously rendered" and were also to be issued in connection with Plaintiff voluntarily cancelling certain shares and options he owned.

7.     Further, the shares were to be issued to Plaintiff and deemed validly issued, fully paid, and non-assessable.

8.     Pursuant to, and as described in the Employment Agreement. Plaintiff had voluntarily cancelled over 2,000,000 shares.

9.     At that time, Plaintiff had already performed the previous services described in the Employment Agreement and did voluntarily cancel 2,090,000 shares of common stock and 2,750,000 options.

10.    Neither at, around the time of, or subsequent to the execution of and entry into the Employment Agreement did UHP issue Plaintiff the 3,000,000 shares.

11.    In or around June of 2015, the parties signed a document known in this case as the Letter, ostensibly amending the Employment Agreement, which purported to reduce the previously fully paid and earned shares from 3,000,000 to 1,600,000.

12.    The Letter has been ruled by this Honorable Court to be unenforceable and that Plaintiff was entitled to the 3,000,000 shares provided for in the Employment Agreement.

13.    The Letter referred to a contemplated sale of the 1,600,000 shares provided for thereunder by way of a Stock Purchase Agreement.

14.    On or around July 22, 2015, Plaintiff entered into a Stock Purchase Agreement (the "SPA"), purportedly, with an individual named Harold D. Anderson ("Anderson").

15.    The Letter recites that the SPA was entered into simultaneously therewith, though the parties contest the dates on which each were signed.

16.    Anderson was the father-in-law of Beplate and was deceased on August 13, 2016.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

17.     Anderson's death certificate lists Beplate as the "informant."  Beplate stated that his mailing address was 10624 S. Eastern Avenue #A290, Henderson, Nevada 89052, which was the address of UHP.

18.     Beplate never disclosed to Plaintiff that Anderson was his father-in-law.

19.     The SPA provides that the purchase price for the 1,600,000 shares was $60,000 which was required to be paid on or before July 31, 2015.

20.     Anderson did not pay the purchase price under the SPA on or before July 31, 2015.

21.     The SPA also provided that the sale of shares was to be settled on a delivery versus payment basis, meaning the payment was to be made before or at the same time as the delivery of the shares.

22.     On June 25, 2015, Beplate caused UHP to issue a certificate purporting to cancel the 1,600,000 shares which were due to Plaintiff.

23.     On that same day, Beplate also caused UHP to request that American Registrar & Transfer Co., UHP's transfer agent, transfer the shares to a company called Enable Financial, LLC, which transfer was completed by American Registrar & Transfer Co.

24.     On that same day, Morse & Morse, PLLC, attorneys for UHP, issued a letter to American Registrar & Transfer Company (the "June 25, 2015 Letter") directing it to issue 1,600,000 shares of UHP's common stock to Phillip Forman, care of UHP.

25.     The June 25, 2015 Letter directed the transfer agent to overnight the stock certificate in the name of Enable Financial LLC by overnight courier pursuant to instructions given by Douglas Beplate under separate cover.  This language was typed in bold letters as to emphasize it.

26.     On the same day the Letter was signed, UHP generated a stock certificate in the amount of 1,600,000 shares of UHP in the name of Plaintiff, which stock certificate was stamped cancelled on that same date.

27.     At that time, the purchase price for the shares had not been paid.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

28.     Once again, on that same day, Beplate caused UHP to issue transfer instructions to American Registrar & Transfer Co. requesting that the 1,600,000 shares be transferred to a company called Enable Financial LLC with the certification to be delivered to Warwick Hotel, Attn: Doug Beplate, 65 W 54th Street, New York, New York 10019.

29.     On or around July 23, 2015, Beplate caused UHP to request that American Registrar & Transfer Co. transfer the 1,600,000 from Enable Financial LLC to Harold Anderson.  American Registrar & Transfer Co. made the requested transfer.  In this transfer request, Beplate claimed that Enable Financial LLC was erroneously designated as the owner of the shares and requested the shares be put in the name of Harold D. Anderson. At this time, the purchase price under the SPA still had not been paid.

30.     On February 11, 2019, Plaintiff, through his attorneys, issued a demand letter asserting, *inter alia*, that he was owed 1,600,000 shares.[5]

31.     On February 15, 2019, UHP, through its attorney, responded to the demand letter stating the 1,600,000 shares were sold and that they were seeking further information to address the demand letter in more detail.

32.     On February 20, 2019, UHP, through its attorney, provided a further response to the demand letter.  By this letter, UHP asserted that the purchase price under the SPA had been paid and that the sale had been consummated.

33.     On February 14, 2019, three days after Plaintiff issued his demand letter and one day prior to UHP's initial response thereto, Beplate purported to initiate a wire payment in ostensible satisfaction of the SPA.

34.     However, the SPA provided that the purchase price was to be paid by July 31, 2015.

35.     Therefore, Plaintiff rejected the payment.

---

[5] This letter was for settlement purposes only.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**B.      DEFENDANTS' STATEMENT**

1.      Plaintiff served as the Chairman of the Board of Directors of UHP beginning in 2011 and as CEO of UHP during 2013 and 2014.

2.      On November 10, 2014, Plaintiff and UHP entered into an Employment Agreement whereby Plaintiff would serve as the CEO and Chief Medical Advisor of UHP.

3.      Prior to entering into the Employment Agreement, Plaintiff cancelled 2,090,000 shares of stock in UHP and 2,750,000 stock options and waived $285,100 in accrued but unpaid salary.

4.      In or around June of 2015, the parties signed a document known in this case as the Amendment, amending the Employment Agreement, that reduced the shares to be issued to Plaintiff from 3,000,000 restricted shares to 1,600,000 unrestricted shares.

5.      UHP issued Plaintiff 1,600,000 shares of stock in UHP.

6.      The Amendment has been ruled by this Honorable Court to be unenforceable.

7.      On or around July 22, 2015, Plaintiff entered into a Stock Purchase Agreement (the "SPA") with Anderson.

8.      Anderson was the step-father of Beplate and was deceased on August 13, 2016.

9.      The SPA provides that the purchase price for the 1,600,000 shares was $60,000 to be paid on or before July 31, 2015.

10.      Alison Forman, the designated recipient of the Purchase Price per the SPA, accepted payment of such from Beplate on February 14, 2019.

**IV.      THE FOLLOWING FACTS, THOUGH NOT ADMITTED, WILL NOT BE CONTESTED AT TRIAL BY EVIDENCE TO THE CONTRARY:**

**A.      PLAINTIFF'S STATEMENT[6]**

1.      UHP did not issue the 3,000,000 shares to Plaintiff as called for under the Employment Agreement.

---

[6] To the extent any of the facts set forth in Section III are not admitted without evidence, Plaintiff incorporates same proposed facts herein.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

2.      Plaintiff performed all of his obligations under the Employment Agreement, except for those from which he was excused from performing.  In the alternative he substantially and adequately performed his duties so as to state a claim for breach of contract.

3.      Plaintiff performed all of his obligations for which the 3,000,000 shares were earned, except for those from which he was excused from performing.

4.      In addition, UHP did not pay Plaintiff his $5,000 monthly salary for the months of June of 2015 through October of 2015, for a total amount due and owing of $15,000.

5.      At or around the time of the Letter, Plaintiff was suffering financial hardship and was under a Court Order to pay $60,000 towards his daughter's school tuition.

6.      Prior to and during the time of the negotiation of the Letter and the SPA, Beplate knew of Plaintiff's financial hardship.

7.      Based on Beplate's knowledge, he refused to issue, or cause UHP to issue, Plaintiff his 3,000,000 shares under the Employment Agreement and informed Plaintiff that he could only receive any shares whatsoever if he agreed to take less than he was entitled to.

8.      The reason the purchase price under the SPA was to be paid on or before July 31, 2015 was to ensure that Plaintiff received the funds required under his financial hardship at the time he needed them.

9.      The failure to pay the purchase price under the SPA by the date set forth was a material breach of the SPA and destroyed the purpose for which Plaintiff entered into the same.

10.     Because the purchase price under the SPA was not paid by the date set forth therein, Plaintiff was required to take an outside loan, thereby defeating his need for the purchase price under the SPA.

11.     Had Plaintiff known Anderson was the father-in-law of Beplate, Plaintiff would not have entered into the SPA.

12.     Further, had Plaintiff known of Beplate's fraudulent scheme to take the shares for himself and/or with the intent that the purchase price under the SPA would not be paid, Plaintiff would not have entered into the SPA.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

13.     The June 25, 2015 Letter and transfer requests discussed above were issued by or at the direction of Beplate in his individual capacity and in his capacity as CEO and chairman of the board of directors of UHP.

14.     On the same day the Letter was signed, Beplate caused UHP to generate a stock certificate cancelling the 1,600,000 shares which were due to Plaintiff under the terms of the, now ruled unenforceable, Letter.

15.     The 1,600,000 shares were never issued to Plaintiff.

16.     The 1,600,000 shares, assuming, arguendo, the validity and enforceability of the Letter, should have been put in the name of Plaintiff.  The shares should have been Plaintiff's and in his name, to be transferred by him to a purchaser under the SPA once the purchase price was paid.  The shares should not have been cancelled and transferred by Beplate to Anderson, Enable Financial LLC, and/or UHP as they did not belong to any of them but belonged to Plaintiff, subject to the terms of the SPA, which were not fulfilled by Anderson.

17.     On or around June 25, 2015, Beplate unilaterally caused the 1,600,000 owed to Plaintiff to be cancelled and transferred to a company called Enable Financial LLC.

18.     The failure by Anderson to pay the purchase price constituted a material breach of the SPA.

19.     On numerous occasions, in furtherance of his fraudulent scheme, Beplate engaged in correspondences with the Formans and Joseph J. Ciancaglini, head of the school at which Plaintiff's daughter attended, to which tuition was owed, claiming that he was attempting to sell the shares.  Plaintiff contends Beplate's statements that he was trying to sell the shares was false.  On numerous occasions, Beplate advised that payment was forthcoming, which Plaintiff contends was not accurate.

**B.     DEFENDANTS' STATEMENT**

1.     That Plaintiff did not sufficiently perform under the Employment Agreement, the Amendment, and/or the SPA.

2.     That Beplate did not commit a fraud on Plaintiff.

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    3.    That UHP did not breach the implied covenant of good faith and fair dealing.

2    4.    That Defendants had no obligation and duty to issue to Plaintiff 3,000,000

3    shares under the Employment Agreement

4    5.    That Plaintiff's bad faith conduct leading up to and at the time of formation of

5    the Employment Agreement and any amendment thereto, including certain facts relating to

6    Plaintiff's personal bankruptcy, bars Plaintiff from receiving equitable relief in the instant

7    matter under the doctrine of unclean hands.

8    6.    That Defendants acted reasonably and in good faith in discharging their

9    obligations and duties under the Employment Agreement and any amendment thereto.

10   **V.    THE FOLLOWING ARE THE ISSUES OF FACT TO BE TRIED AND DETERMINED AT TRIAL:**

11

12   **A.    PLAINTIFF'S STATEMENT[7]**

13   1.    This Honorable Court's Decision and Order on Plaintiff's motion for summary

14   judgment left open for determination at trial the issue of whether UHP issued the 3,000,000

15   shares to Plaintiff as called for under the Employment Agreement and the $5,000 monthly

16   salary for the months of June of 2015 through October of 2015, for a total amount due and

17   owing of $15,000.

18   2.    It remains to be determined whether Defendants improperly preyed upon

19   Plaintiff after learning of his financial trouble and that he was fearful of being held in contempt

20   of a Court Order to satisfy a debt for his child's tuition; Defendants used their positions of

21   power, knowledge, and influence over Plaintiff to convince him that the only way he could

22   raise the cash he required was to sign the SPA, doing so with the intent that the purchase price

23   under the SPA would never be paid.

24   3.    It remains to be determined whether Mr. Anderson was a cutout for

25   Beplate, acting as an ostensible third-party, where they otherwise shared a sufficient

26

27   _____
[7] To the extent any of the facts set forth in Section III are not admitted without evidence, Plaintiff incorporates same proposed facts herein.  To the extent any of the facts set forth in Section III or IV

28   are contested at trial by evidence to the contrary, Plaintiff incorporates same proposed facts herein

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  commonality of interest and/or a close trusting relationship whereupon Beplate could trust

2  that he could rely on Anderson to either act as a cutout faithfully to Beplate and/or otherwise

3  assist him in gaining the shares for himself which were the subject to the SPA.

4       4.    It remains to be determined whether Beplate (i) ever discussed the SPA with

5  Anderson and whether Anderson was actually aware of the same; (ii) whether Beplate ever

6  advised Anderson of his obligation to pay the purchase price under the SPA on or before the

7  required date; (iii) whether Beplate intended that the purchase price under the SPA never be

8  paid so as to deprive Plaintiff of the benefits thereof; whether Beplate used the SPA and/or

9  the Letter as means by which to deprive Plaintiff of his shares of the common stock of UHP

10  and/or to take them same for himself and/or his family.

11       5.    It remains to be determined whether the actions described above, whereby

12  Beplate caused UHP to have generated a cancelled stock certificate, cancelling Plaintiff's

13  shares prior to the payment under the SPA, and having same transferred to Enable Financial,

14  LLC, and having such stock certificate in favor of Enable Financial, LLC overnighted to him

15  at a hotel in New York, as part of a scheme to deprive Plaintiff's ability to repudiate the SPA

16  and keep his 1,600,000 UHP shares upon the non-payment, untimely payment, or other non-

17  performance under the SPA.

18       6.    It remains to be determined, in the alternative, whether Beplate intended to

19  make a delinquent payment under the SPA only in the event that the price of UHP's stock and

20  its trading volume justified payment under the SPA economically.

21       7.    In remains to be determined whether Beplate (i) was aware of the falsity and/or

22  misleading effect of his omission that Anderson was his father-in-law; (ii) whether he also

23  harbored an intent not to advise Anderson of the SPA and its terms, or to otherwise prevent

24  payment under the SPA and take the shares for himself; (iii) whether he was aware of the

25  falsity of his conduct and the misleading effect of his statements to Plaintiff in negotiating the

26  SPA; (iv) whether these actions were intentionally taken with express and implied malice and

27  with the clear intent to harm Plaintiff, or at least with a conscious disregard for Plaintiff's

28  rights; and (v) whether Beplate knew the harm that would be caused to Plaintiff by causing

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1   the shares to be transferred out of Plaintiff's name prior to the purchase price under the SPA

2   being paid and intended to do so for his own personal benefit.

3       8.      It remains to be determined (i) whether these were intentional acts that were

4   intended and designed to disrupt the contractual relationship both between Plaintiff and UHP

5   and the ostensible contractual relationship between Plaintiff and Anderson; (ii)whether

6   Beplate's actions made it impossible for UHP to comply with its contractual duty to issue

7   Plaintiff the shares he was owed by putting the ownership of the shares in limbo prior to the

8   purchase price of the SPA being paid; and (iii) whether his conduct also made it impossible

9   for Plaintiff to effectively repudiate the SPA once it was materially breached by Anderson's

10   non-payment.

11       9.      It remains to be determined whether as a result of such conduct, neither the

12   Employment Agreement nor the SPA were fully performed and both were disrupted and

13   whether such disruption of these contracts was unjustified and unrelated to UHP's business

14   with Plaintiff.

15       10.     On or around June 25, 2015, Beplate unilaterally caused the 1,600,000 owed

16   to Plaintiff to be cancelled and transferred to a company called Enable Financial LLC, doing

17   so in order to transfer the shares to, ostensibly, Harold D. Anderson, or upon information and

18   belief, to himself, without the purchase price called for under the SPA having been paid.  To

19   be further determined is whether Beplate: (a) ever intended to transfer the 1,600,000 shares to

20   Anderson and whether he intended to keep the same for himself; (b) whether Beplate ever

21   discussed the SPA with Anderson and whether Anderson signed the SPA for himself; (c)

22   whether Beplate intended to keep the shares for himself without either informing Anderson

23   that the purchase price was required to be paid or otherwise causing the purchase price to be

24   paid (whether, as a non-party to the SPA, rightfully or wrongfully).

25       11.     It remains to be determined whether after issuing instructions to American

26   Registrar & Transfer Co. for the 1,600,000 shares to be delivered to the Warwick Hotel,

27   Beplate took possession of the stock certificate which was at in the name of Enable Financial

28   LLC

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

12.     It remains to be resolved as to which date the Letter and SPA were actually signed.

13.     It remains to be resolved whether Plaintiff ever received a fully executed version of the SPA and in fact whether the SPA was ever fully executed.

14.     It remains to be determined whether Beplate's correspondences with Joseph J. Ciancaglini were designed to prolong the circumstances of Plaintiff's financial predicament, thereby putting Plaintiff into the position of having to find alternative means by which to pay his daughter's tuition, and once having done so, would no longer be reliant on the SPA.  By this theory, it remains to be determined if Beplate intended on the foregoing to cause Plaintiff to no longer rely on the purchase price under the SPA to be paid, thereby causing Plaintiff to have no reason to insist upon the payment of the purchase price, as same was no longer needed to pay the tuition, allowing Beplate and/or Anderson to keep the shares which were previously transferred away from Plaintiff by Beplate without payment therefore.

**B.     DEFENDANTS' STATEMENT**

7.     This Honorable Court's Decision and Order on Plaintiff's motion for summary judgment left open for determination at trial the issue of whether UHP issued the 3,000,000 shares to Plaintiff as called for under the Employment Agreement and the $5,000 monthly salary for the months of June of 2015 through October of 2015, for a total amount due and owing of $15,000.

8.     Facts remain as to whether each party sufficiently performed under the Employment Agreement, the Amendment, and/or the SPA.

9.     Facts remain as to whether Beplate's alleged conduct, as determined at trial, constitutes a fraud on Plaintiff.

10.     Facts remain as to whether UHP's alleged conduct, as determined at trial, constituted a breach of the implied covenant of good faith and fair dealing.

11.     Facts remain as to whether Defendants had an obligation and duty to issue to Plaintiff 3,000,000 shares under the Employment Agreement

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

12.   Facts remain as to whether Plaintiff's alleged bad faith conduct leading up to and at the time of formation of the Employment Agreement and any amendment thereto, including certain facts relating to Plaintiff's personal bankruptcy, bars Plaintiff from receiving equitable relief in the instant matter under the doctrine of unclean hands.

13.   Facts remain as to whether Plaintiff's failure to expeditiously pursue his claims bar his ability to pursue damages under the doctrine of laches.

14.   Facts remain as to whether Defendants acted reasonably and in good faith in discharging their obligations and duties under the Employment Agreement and any amendment thereto

## VI.   THE FOLLOWING ARE THE ISSUES OF LAW TO BE TRIED AND DETERMINED AT TRIAL:

### A.   PLAINTIFF'S STATEMENT

1.   Whether Beplate's conduct, in, *inter alia*, inducing Plaintiff, with knowledge of his financial difficulties, to enter the SPA without advising him of Beplate's relationship to Anderson, and without any intention to either inform Anderson of the terms of the SPA such that the SPA could not be performed or with an intention that the terms of the SPA otherwise not be performed, unilaterally cancelling Plaintiff's 1,600,000 shares, having them transferred from Plaintiff to Enable Financial LLC and then to Anderson (and upon information and belief, thereafter, to himself) without the purchase price under the SPA being paid and without the assent of Plaintiff, constitutes a fraud on Plaintiff entitling him to damages, including but not limited to punitive damages.

2.   Whether Beplate's conduct in unilaterally cancelling Plaintiff's 1,600,000 shares, having them transferred from Plaintiff to Enable Financial LLC and then to Anderson (and upon information and belief, thereafter, to himself) constitutes the conversion of Plaintiff's shares, entitling Plaintiff to damages from Beplate.

3.   Whether Beplate's conduct in unilaterally cancelling Plaintiff's 1,600,000 shares, having them transferred from Plaintiff to Enable Financial LLC and then to Anderson

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

(and upon information and belief, thereafter, to himself) constitutes a tortious interference with the SPA, entitling Plaintiff to damages from Beplate.

4.      Whether the foregoing conduct was committed on behalf of UHP so as to constitute a breach of the implied covenant of good faith and fair dealing.

5.      Whether the February 14, 2019 payment of the SPA purchase price by Beplate, which was accepted by Allison Forman, constituted a material breach of the SPA.

6.      Whether, notwithstanding the failure to pay the purchase price by the date set forth in the SPA, and notwithstanding the Judicially ruled unenforceability of the Letter, the SPA inured to the benefit of the Estate of Harold D. Anderson after his passing.

7.      Whether the alleged failure to issue Plaintiff the 3,000,000 shares under the Employment Agreement and the alleged failure to pay the $15,000 in salary constituted a breach of the Employment Agreement, entitling Plaintiff to damages.

**B.      DEFENDANTS' STATEMENT**

1.      Whether each party sufficiently performed under the Employment Agreement, the Amendment, and/or the SPA.

2.      Whether Beplate's alleged conduct, as determined at trial, constitutes a fraud on Plaintiff.

3.      Whether UHP's alleged conduct, as determined at trial, constituted a breach of the implied covenant of good faith and fair dealing.

4.      Whether Plaintiff's alleged bad faith conduct leading up to and at the time of formation of the Employment Agreement and any amendment thereto bars Plaintiff from receiving equitable relief in the instant matter under the doctrine of unclean hands.

5.      Whether Plaintiff's failure to expeditiously pursue his claims bar his ability to pursue damages under the doctrine of laches.

Whether Defendants acted reasonably and in good faith in discharging their obligations and duties under the Employment Agreement and any amendment thereto.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

**VII.   THE FOLLOWING EXHIBITS ARE STIPULATED INTO EVIDENCE IN THIS CASE AND MAY BE SO MARKED BY THE CLERK:**

    **A.   THE FOLLOWING EXHIBITS ARE STIPULATED INTO EVIDENCE IN THIS CASE AND MAY BE SO MARKED BY THE CLERK:**

    **B.   AS TO THE FOLLOWING EXHIBITS, THE PARTY AGAINST WHOM THE SAME WILL BE OFFERED OBJECTS TO THEIR ADMISSION ON THE GROUNDS STATED**

        **1.   Plaintiff's exhibits:**

           (1)    Ex. A – Employment Agreement

           (2)    Ex B – November 10, 2014 Board Minutes, UHP

           (3)    Ex. C – Attempted Reduction.

           (4)    Ex. D – Stock Purchase Agreement

           (5)    Ex. E – Death Certificate, Harold D. Anderson

           (6)    Ex. F – June 25, 2015 American Registrar & Transfer Co. Log and Transfer Documents

           (7)    Ex. G – June 4, 2015 Email from Christopher Day to Beplate regarding Phil Phorman

           (8)    Ex H – Cancelled Stock Certificate, 1,600,000 Shares

           (9)    Ex. I – Stock Transfer Letter, June 25, 2015

           (10)    Ex. J – Stock Transfer Letter, June 25, 2015, to American Registrar & Transfer Co. – Enable Financial LLC

           (11)    Ex. K – Stock Transfer Instructions, June 25, 2015

           (12)    Ex. L – June 25, 2105 Transfer, American Registrar & Transfer Co.

           (13)    Ex. M – June 25, 2015 email from Morse & Morse to American Registrar

           (14)    Ex. N – Irrévocable Stock Power

           (15)    Ex. O – Sanction Order, Forman Divorce Proceeding

           (16)    Ex. P – Tuition Payment

           (17)    Ex. Q – 2014 1099 Form, UHP to Forman

           (18)    Ex. R – Stock Transfer Instructions, June 25, 2015

           (19)    Ex. S – "Issuance" of 1,600,000 Shares

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

(20)     Ex. T – Share Delivery Instructions

(21)     Ex. U – Ostensible Wire Payment, February 11, 2019

(22)     Ex. V – Stock Transfer to Harold Anderson, July 23, 2015 – American Registrar & Transfer Co.

(23)     Ex. W – Letter to American Registrar & Transfer Co., July 23, 2015

(24)     Ex. X – June 25, 2015 Stock Transfer – American Reigstrar & Transfer Co. – Forman to Enable Financial, Deliver to Artco Fedex Bld.

(25)     Ex. Y – Email between Douglas Beplate and Joseph Ciancaglini, September 3, 2015

(26)     Ex. Z – Email between Douglas Beplate and Joseph Ciancaglini, August 27, 2015.

(27)     Ex. AA – Email between Douglas Beplate and Phillip Forman, July 22, 2105

(28)     Ex. BB – Email chain between Joseph Ciancaglini, Phillip Forman, Douglas Beplate, et al., September 3, 2015 through August 27, 2015

(29)     Ex. CC – Email chain between Joseph Ciancaglini, Phillip Forman, Douglas Beplate, et al., September 4, 2015 through August 27, 2015

(30)     Ex. DD – Email between John Capotorto and Morse and Morse, April 6, 2016

(31)     Ex. EE – American Registrar & Transfer Co.  Share Cancellation

(32)     Ex. FF – Email between Phillip Forman and Morse and Morse, April 30, 2018 through May 1, 2018, with prior emails.

(33)     Ex. GG – UHP November 13, 2014 Form 8-K

(34)     Ex. HH – UHP December 31, 2013 Form 10-K

(35)     Ex. II – UHP December 31, 2014 Form 10-K

(36)     Ex. JJ – Demand Letter, February 11, 2019

(37)     Ex. KK – Response to Demand Letter, February 15, 2019

(38)     Ex. LL – Response to Demand Letter, February 20, 2019

(39)     Ex. MM – Rejection of Purported SPA Payment

(40)     Ex. NN – UHP Form 8-K, 11/13/14 and attachments

(41)     Ex. OO – UHP Form 8-K, 10/21/14 and attachments

(42)     Ex. PP – UHP Form 8-K, 8/19/14 and attachments

(43)     Ex. QQ – UHP Form 10-K for Fiscal Year Ended December 31, 2013, and attachments

(44)     Ex. RR – UHP Form 10-K/A 6/26/15

(45)     Ex. SS – UHP Form 10-Q 8/14/13

Plaintiff reserve the right to supplement the list of exhibits as additional information becomes known, to introduce any and all exhibits provided by Defendants, to introduce any publicly available documents, and to introduce any documents for purposes of rebuttal and impeachment.

2.     **Defendant's exhibits:**

(46)     Ex. A – Check from United EcoEnergy Corp., Dated July 15, 2015, Payable to Phil Forman

(47)     Ex. B – Email from Steven Morse to Christopher Day dated June 25, 2015

(48)     Ex. C – Letter from the American Registrar & Transfer Co. to Morse & Morse, PLLC dated June 25, 2015

(49)     Ex. D – Stock Certificate No. 2099 in the name of Phillip D. Forman, in the sum of One Million Six Hundred Thousand Shares

(50)     Ex. E – Letter from Morse & Morse PLLC. To Christopher M. Day, dated June 25, 2015

(51)     Ex. F – Transcript Uccello v. Forman, Supr. Ct. NY County, Part 31, dated September 8, 2015

(52)     Ex. G – Affidavit of Steven Morse

(53)     Ex. H – Affidavit of Louis Schiliro

(54)     Ex. I – Employment Agreement, dated 9/14/2014

(55)     Ex. J – Amendment to the Employment Agreement, dated 6/25/2015

(56)     Ex. K – Letter of acknowledgement

(57)     Ex. L – Stock cancellation letter

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1    (58)   Ex. M – Stock issuance letter

2    (59)   Ex. N – Stock Purchase Agreement (SPA)

3    (60)   Ex. O – Wire transfer request

4    (61)   Ex. P – Sanction order

5    (62)   Ex. Q – Resignation of the Plaintiff, dated June 23, 2015

6    (63)   Ex. R – Check to Covenant of Sacred Heart

7    (64)   Ex. S – Restraining Order

8    (65)   Ex. T – Arrears Statement

9    (66)   Ex. U – Child Support Obligation Summary

10   (67)   Ex. V – Phillip Forman 2014 Tax Year Summary

11   (68)   Ex. W – Phillip Forman Bankruptcy Documentation

12   (69)   Ex. X – Phillip Forman IRS Demand for Payment

13   (70)   Ex. Y – Phillip Forman IRS Balance Due

14   (71)   Ex. Z – Alliqua Biomedical Inc. 2014 Tax Documents

15   (72)   Ex. AA – Aquamed Technologies Inc. 2014 Tax Documents

16   (73)   Ex. BB – Bambr-Utah 2014 Tax Documents

17   (74)   Ex. CC – Bambr PA 2014 Tax Documents

18   (75)   Ex. DD – World Health Industries 2014 Tax Documents

19   (76)   Ex. EE – BPFP, LLC General Ledger

20   (77)   Ex. FF – Certification of Arrears

21   (78)   Ex. GG – Notice of Lien

22   (79)   Ex. HH – Notice of Levy

23   (80)   Ex. II – Notice of Delinquency

24   (81)   Ex. JJ – Notice of Federal Tax Lien

25   Defendants reserve the right to supplement the list of exhibits as additional information

26   becomes known, to introduce any and all exhibits provided by Plaintiff, and to introduce any

27   documents for purposes of rebuttal and impeachment.

28

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

**C.    AS TO THE FOLLOWING ADDITIONAL EXHIBITS, THE PARTIES HAVE REACHED THE STIPULATIONS STATED:**

 **1.    <u>Set forth stipulations on plaintiff's exhibits:</u>**

  (1) None at this time

 **2.    <u>Set forth stipulations on defendants' exhibits:</u>**

  (1) None at this time

**D.    AS TO THE FOLLOWING EXHIBITS, THE PARTY AGAINST WHOM THE SAME WILL BE OFFERED OBJECTS TO THEIR ADMISSION ON THE GROUNDS STATED:**

 **1.    <u>Set forth the plaintiff's exhibits and objections to them.</u>**

  (1) Exhibit Y – hearsay

  (2) Exhibit Z – hearsay

  (3) Exhibit BB – hearsay

  (4) Exhibit CC – hearsay

  (5) Exhibit DD – hearsay

  (6) Exhibit FF – hearsay

Defendants reserve the right to supplement the list of objections to Plaintiff's exhibits as additional information becomes known.

 **2.    <u>Set forth the defendant's exhibits and objections to them.</u>**

  (1) Exhibit A – Irrelevant and unduly prejudicial.

  (2) Exhibit F – Irrelevant, hearsay, and unduly prejudicial.

  (3) Ehibit G – Irrelevant, hearsay, and unduly prejudicial.

  (4) Exhibit I – Irrelevant, hearsay, and unduly prejudicial

  (5) Exhibit K – Irrelevant and unduly prejudicial

  (6) Exhibit O – Irrelevant and unduly prejudicial.

  (7) Exhibit S – Irrelevant and unduly prejudicial, and to the extent not produced in discovery

  (8) Exhibit T – Irrelevant and unduly

  (9) Exhibit U – Not produced in discovery

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

(10)   Exhibit W – Irrelevant and unduly prejudicial, objection based on whether documentation was produced in discovery

(11)   Exhibit X – Irrelevant and unduly prejudicial, and to the extent not produced in discovery

(12)   Exhibit Y – Irrelevant and unduly prejudicial, and to the extent not produced in discovery

(13)   Exhibit Z – Irrelevant and unduly prejudicial

(14)   Exhibit AA – Irrelevant and unduly prejudicial

(15)   Exhibit BB – Irrelevant and unduly prejudicial

(16)   Exhibit CC – Irrelevant and unduly prejudicial

(17)   Exhibit DD – Irrelevant and unduly prejudicial

(18)   Exhibit FF – Irrelevant and unduly prejudicial

(19)   Exhibit GG – Irrelevant and unduly prejudicial

(20)   Exhibit HH – Irrelevant and unduly prejudicial

(21)   Exhibit II – Irrelevant and unduly prejudicial

(22)   Exhibit JJ – Irrelevant and unduly prejudicial

Plaintiff reserves the right to supplement the list of objections to Defendants' exhibits as additional information becomes known, including but not limited to the purpose of the use of such exhibits.

**E.   ELECTRONIC EVIDENCE.**

The parties do not intend to present electronic evidence for purposes of jury deliberations.

**F.   DEPOSITIONS.**

**1.   Plaintiff will offer the following depositions:**

| Deponent Name | Portions to be Offered | Party against whom offered |
|---|---|---|
| Douglas Beplate | Entirety | UHP and Douglas Beplate |

**2.   Defendant will offer the following depositions:**

| Deponent Name | Portions to be Offered | Party against whom offered |
|---|---|---|
| Phillip Forman | | Phillip Forman |

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

**G.     OBJECTIONS TO DEPOSITIONS.**

**1.     Defendant objects to plaintiff's depositions as follows:**

Defendants object to 8:20 – 18:17 for lack of relevance and prejudicial impact.

Defendants object to 24:8 – 25 for lack of relevance and prejudicial impact.

Defendants object to 26:12 – 27:24 for lack of relevance and prejudicial impact.

Defendants object to 28:9 – 23 for lack of relevance and prejudicial impact.

Defendants object to 47:18 – 53:23 for lack of relevance and prejudicial impact.

Defendants object to 71:11 – 75:16 for lack of relevance and prejudicial impact.

Defendants object to 164:14 – 169:12 for lack of relevance and prejudicial impact.

Defendant reserves the right to supplement the list of objections as additional information becomes known.

**2.     Plaintiff objects to defendant's depositions as follows:**

Plaintiff objects to the portions of his deposition as taken by Defendants as follows:

Plaintiff objects to 23:13 – 26:22 for lack of relevancy and prejudicial impact.

Plaintiff objects to 34:15-17 insofar as the witness was asked to provide a legal conclusion and/or opine on a technical legal term/term of art: amended/amendment.

Plaintiff objects to 34:23-24 as the document is improperly characterized by Defense counsel as an "agreement" which is a legal term of art.

Plaintiff objects to 35:20 – 37:2 insofar as the witness was asked to provide a legal conclusion and/or opine on a technical legal term/term of art: amended/amendment. Furthermore, the subject matter of the inquiry has already been resolved on summary judgment and therefore there is no relevancy to the inquiry, but only serves a purpose prejudicial to Plaintiff.  Further, the inquiry was amended to ask whether the document "appears" to amend the prior contract, the appearance to the lay witness of the same is irrelevant and prejudicial.

Plaintiff objects to 37:4 –38:7. The witness is asked for a legal conclusion.  Further, the entire inquiry is irrelevant as the exhibit, the Letter, has been ruled unenforceable by this

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

1  Honorable Court on Plaintiff's motion for summary judgment, and therefore the inquiry is

2  irrelevant and prejudicial.

3        Plaintiff objects to the question posed at 39:19-21 as it mischaracterizes the testimony.

4  The question was posed in a manner as to exclude the prior testimony, that the document was

5  signed because Defendants refused to issue Plaintiff's 3,000,000 shares and that he needed

6  the shares to fulfill a financial obligation.  The question mischaracterized the testimony and

7  omitted reference to the failure to issue the shares.

8        Plaintiff objects to the question posed at 41:3-7 24 as the document is improperly

9  characterized by Defense counsel as an "agreement" which is a legal term of art.  Further the

10  question was previously asked and answered, the question mischaracterized prior testimony,

11  and the purpose of the line of questioning was improper, irrelevant, and prejudicial,

12  particularly given this Honorable Court's ruling on the motion for summary judgment

13  declaring the pertinent document unenforceable.

14        Plaintiff objects to 41:15 –43:15 as the line of questioning goes to whether the Letter

15  was unenforceable, which issue has already been determined by this Honorable Court, and

16  which is now irrelevant and purely prejudicial.

17        Plaintiff objects to 57:8 – 60:9 as the line of questioning enquires into arrears and

18  financial obligations of Plaintiff which have nothing to do with the claims or defenses, and

19  have nothing to do with the financial obligation of Plaintiff at issue in this case.  The inquiry

20  is irrelevant, prejudicial, and meant to harass and improperly impugn Plaintiff.

21        Plaintiff objects to 62:8-10 as it mischaracterizes the testimony of Plaintiff.  Plaintiff

22  did not testify that he received the subject check from Mr. Beplate.

23        Plaintiff objects to 74:2 – 76:6 as Plaintiff's prior bankruptcy is irrelevant and offered

24  to harass and/or embarrass Plaintiff.  The matter is irrelevant and prejudicial in that it predates

25  the financial difficulty at issue in this lawsuit by approximately two years.

26        Plaintiff reserve the right to supplement the list of objections to Defendant's taking of

27  his deposition as additional information becomes known.

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382.0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

## VIII.   THE FOLLOWING WITNESSES MAY BE CALLED BY THE PARTIES AT TRIAL:

### A.   PLAINTIFF'S WITNESSES:

1.   Dr. Phillip Forman – c/o Carmel, Milazzo & Feil, LLP

2.   Douglas Beplate

3.   A Representative of Enable Financial LLC

4.   A Representative of the Estate of Harold D. Anderson

Plaintiff reserves the right to supplement the list of witnesses as additional information becomes known and to call any and all witnesses provided by Defendants.

### B.   DEFENDANT'S WITNESSES:

1.   Douglas Beplate

2.   A representative of United Health Products, Inc.

3.   Dr. Phillip Forman

4.   Allison Uccello

5.   Gavin Grusd

6.   Louis Schirilo

7.   Steven Morse

8.   Chad Barrett

9.   Joel Tracy

Defendants reserve the right to supplement the list of witnesses as additional information becomes known and to call any and all witnesses provided by Plaintiff.

## IX.   MOTIONS IN LIMINE

### A.   PLAINTIFF

No motions in limine have been filed yet.  Pursuant to Local Rule 16-3(a), Plaintiff will be filing motions in limine on or before a date 30 days before trial, and following a meet and confer with counsel for Defendants, concerning items including but not limited to: (1) the introduction of evidence, witnesses, testimony, or arguments regarding any contention that Plaintiff failed to perform or did not sufficiently perform his duties as Chief Medical Officer

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  or any other role under the Employment Agreement on the ground that such defense was not

2  raised as an affirmative defense or in opposition to summary judgment, and a determination

3  on Plaintiff's motion for summary judgment already precludes the issue; (2) the introduction

4  of evidence, witnesses, testimony, or arguments regarding any contention that the Letter is

5  enforceable on the grounds that a determination on Plaintiff's motion for summary judgment

6  already precludes the issue; (3) the introduction of evidence, witnesses, testimony, or

7  arguments regarding any contention that Plaintiff used his dealings with UHP to violate SEC

8  rules or commit bankruptcy fraud, or committed any other acts or conduct in bad faith on the

9  ground that such defense was not raised as an affirmative defense or in opposition to summary

10  judgment, and a determination on Plaintiff's motion for summary judgment already precludes

11  the issue, and that same are irrelevant; (4) the introduction of evidence, witnesses, testimony,

12  or arguments which were not raised in an affirmative defense and were not raised in opposition

13  to Plaintiff's motion for summary judgment, including but not limited to the defense of laches

14  on the ground that such defense was not raised as an affirmative defense or in opposition to

15  summary judgment, and a determination on Plaintiff's motion for summary judgment already

16  precludes the issues; and (5) the offering of any witness who was not associated with UHP

17  during the pertinent time period.

    **B.**    **DEFENDANTS**

19  **X.**    **THE ATTORNEYS OR PARTIES HAVE MET AND JOINTLY OFFER THESE THREE TRIAL DATES:**

           1.    May 8, 2023

           2.    May 15, 2023

           3.    June 5, 2023

    It is expressly understood by the undersigned that the court will set the trial of this

matter on one of the agreed dates if possible; if not, the trial will be set at the convenience of

the court's calendar.

**XI.**    **TIME FOR TRIAL.**

    It is estimated that the trial will take a total of five days.

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

APPROVED AS TO FORM AND CONTENT:

MARQUIS AURBACH                    COFER & GELLER, LLC

By:*/s/ Scott A. Marquis, Esq.*        By:*/s/ Frank H. Cofer,Esq.*
   Scott A. Marquis, Esq.               Frank H. Cofer, III, Esq.
   Nevada Bar No. 6407                  Nevada Bar No. 11362
   10001 Park Run Drive                 601 S. Tenth St.
   Las Vegas, Nevada 89145              Las Vegas, NV 89101
   Attorney(s) for Plaintiff Phillip Forman

                                   By:*/s/ Adam R. Knecht, Esq.*
                                      Adam R. Knecht, Esq.
                                      Nevada Bar No. 13166
                                      10161 Park Run Drive, Ste. 150
                                      Las Vegas, NV 89144

                                   Attorneys for Defendants United Health
                                   Products, Inc. and Douglas K. Beplate

## XII.    ACTION BY THE COURT.

This case is set for court/jury trial on the ~~fixed~~/stacked calendar on June 5, 2023 at the hour of 9:00 a.m.  Calendar call will be held on May 25, 2023 at 9:30 a.m.

This pretrial order has been approved by the parties to this action as evidenced by their signatures or the signatures of their attorneys hereon, and the order is hereby entered and will govern the trial of this case.  This order may not be amended except by court order and based upon the parties' agreement or to prevent manifest injustice.

_____
CRISTINA D. SILVA
UNITED STATES DISTRICT JUDGE

DATED:  1/24/2023

MAC:15566-0014964472_2.docx1/20/2023 2:22 PM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816